FERES, EXECUTRIX, *v.* UNITED STATES.

NO. 9.

Argued October 12, 1950.—Decided December 4, 1950.

*David H. Moses* argued the cause for petitioner in No. 9. With him on the brief was *Morris Pouser*.

*Morris Rosenberg* argued the cause for petitioner in No. 29. With him on the brief was *Henry M. Decker, Jr.*

*Newell A. Clapp* argued the cause for the United States. With him on the briefs were *Solicitor General Perlman, Assistant Attorney General Morison, Paul A. Sweeney* and *Morton Hollander*. *John R. Benney* was also with them on the brief in No. 31.

*Frederick P. Cranston* argued the cause, and *James S. Henderson* filed a brief, for respondent in No. 31.

MR. JUSTICE JACKSON delivered the opinion of the Court.

A common issue arising under the Tort Claims Act, as to which Courts of Appeals are in conflict, makes it appropriate to consider three cases in one opinion.

The *Feres* case: The District Court dismissed an action by the executrix of Feres against the United States to

recover for death caused by negligence. Decedent perished by fire in the barracks at Pine Camp, New York, while on active duty in service of the United States. Negligence was alleged in quartering him in barracks known or which should have been known to be unsafe because of a defective heating plant, and in failing to maintain an adequate fire watch. The Court of Appeals, Second Circuit, affirmed.[1]

The *Jefferson* case: Plaintiff, while in the Army, was required to undergo an abdominal operation. About eight months later, in the course of another operation after plaintiff was discharged, a towel 30 inches long by 18 inches wide, marked "Medical Department U. S. Army," was discovered and removed from his stomach. The complaint alleged that it was negligently left there by the army surgeon. The District Court, being doubtful of the law, refused without prejudice the Government's pretrial motion to dismiss the complaint.[2] After trial, finding negligence as a fact, Judge Chesnut carefully reexamined the issue of law and concluded that the Act does not charge the United States with liability in this type of case.[3] The Court of Appeals, Fourth Circuit, affirmed.[4]

The *Griggs* case: The District Court dismissed the complaint of Griggs' executrix, which alleged that while on active duty he met death because of negligent and unskillful medical treatment by army surgeons. The Court of Appeals, Tenth Circuit, reversed and, one judge dissenting, held that the complaint stated a cause of action under the Act.[5]

---

[1] 177 F. 2d 535.
[2] 74 F. Supp. 209.
[3] 77 F. Supp. 706.
[4] 178 F. 2d 518.
[5] 178 F. 2d 1.

The common fact underlying the three cases is that each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces. The only issue of law raised is whether the Tort Claims Act extends its remedy to one sustaining "incident to the service" what under other circumstances would be an actionable wrong. This is the "wholly different case" reserved from our decision in *Brooks* v. *United States,* 337 U. S. 49, 52.

There are few guiding materials for our task of statutory construction. No committee reports or floor debates disclose what effect the statute was designed to have on the problem before us, or that it even was in mind. Under these circumstances, no conclusion can be above challenge, but if we misinterpret the Act, at least Congress possesses a ready remedy.

We do not overlook considerations persuasive of liability in these cases. The Act does confer district court jurisdiction generally over claims for money damages against the United States founded on negligence. 28 U. S. C. § 1346 (b). It does contemplate that the Government will sometimes respond for negligence of military personnel, for it defines "employee of the Government" to include "members of the military or naval forces of the United States," and provides that " 'acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." 28 U. S. C. § 2671. Its exceptions might also imply inclusion of claims such as we have here. 28 U. S. C. § 2680 (j) excepts "any claim arising out of the *combatant* activities of the military or naval forces, or the Coast Guard, *during time of war*" (emphasis supplied), from which it is said we should infer allowance of claims arising from noncombat activities in peace. Section 2680 (k) excludes "any claim arising in a foreign country." Significance

also has been attributed in these cases, as in the *Brooks* case, *supra,* p. 51, to the fact that eighteen tort claims bills were introduced in Congress between 1925 and 1935 and all but two expressly denied recovery to members of the armed forces; but the bill enacted as the present Tort Claims Act from its introduction made no exception. We also are reminded that the *Brooks* case, in spite of its reservation of service-connected injuries, interprets the Act to cover claims not incidental to service, and it is argued that much of its reasoning is as apt to impose liability in favor of a man on duty as in favor of one on leave. These considerations, it is said, should persuade us to cast upon Congress, as author of the confusion, the task of qualifying and clarifying its language if the liability here asserted should prove so depleting of the public treasury as the Government fears.

This Act, however, should be construed to fit, so far as will comport with its words, into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole. The Tort Claims Act was not an isolated and spontaneous flash of congressional generosity. It marks the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit. While the political theory that the King could do no wrong was repudiated in America, a legal doctrine derived from it that the Crown is immune from any suit to which it has not consented [6] was invoked on behalf of the Republic and applied by our courts as vigorously as it had been on behalf of the Crown.[7] As the Federal Government expanded its activities, its agents caused a multiplying number of remediless wrongs—wrongs which would have been actionable if inflicted by an individual or a corporation but remedi-

---

[6] The Crown has recently submitted itself to suit, see *post,* p. 141.

[7] *United States* v. *McLemore,* 4 How. 286; *Reeside* v. *Walker,* 11 How. 272, 290; *Ickes* v. *Fox,* 300 U. S. 82, 96.

less solely because their perpetrator was an officer or employee of the Government. Relief was often sought and sometimes granted through private bills in Congress, the number of which steadily increased as Government activity increased. The volume of these private bills, the inadequacy of congressional machinery for determination of facts, the importunities to which claimants subjected members of Congress, and the capricious results, led to a strong demand that claims for tort wrongs be submitted to adjudication. Congress already had waived immunity and made the Government answerable for breaches of its contracts and certain other types of claims.[8] At last, in connection with the Reorganization Act, it waived immunity and transferred the burden of examining tort claims to the courts. The primary purpose of the Act was to extend a remedy to those who had been without; if it incidentally benefited those already well provided for, it appears to have been unintentional. Congress was suffering from no plague of private bills on the behalf of military and naval personnel, because a comprehensive system of relief had been authorized for them and their dependents by statute.

Looking to the detail of the Act, it is true that it provides, broadly, that the District Court "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . ."[9] This confers jurisdiction to render judgment upon all such claims.

---

[8] 28 U. S. C. § 1491.

[9] 28 U. S. C. § 1346 (b). The provisions of the Tort Claims Act are now found in Title 28, §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671–2680. In recodifying Title 28 of the United States Code, changes in language were made. The Tort Claims Act, as originally enacted, 60 Stat. 843, provided in § 410 that the District Court "shall have exclusive jurisdiction to hear, determine, and render judgment on *any* claim against the United States, for money only . . . ." (Emphasis supplied.) We attribute to this change of language no substantive change of law.

But it does not say that all claims must be allowed. Jurisdiction is necessary to deny a claim on its merits as matter of law as much as to adjudge that liability exists. We interpret this language to mean all its says, but no more. Jurisdiction of the defendant now exists where the defendant was immune from suit before; it remains for courts, in exercise of their jurisdiction, to determine whether any claim is recognizable in law.

For this purpose, the Act goes on to prescribe the test of allowable claims, which is, "The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . .," with certain exceptions not material here. 28 U. S. C. § 2674. It will be seen that this is not the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence. This, we think, embodies the same idea that its English equivalent enacted in 1947 (Crown Proceedings Act 1947; 10 and 11 Geo. VI, c. 44, p. 863) expressed, "Where any person has a claim against the Crown after the commencement of this Act, and, if this Act had not been passed, the claim might have been enforced, subject to the grant . . ." of consent to be sued, the claim may now be enforced without specific consent. One obvious shortcoming in these claims is that plaintiffs can point to no liability of a "private individual" even remotely analogous to that which they are asserting against the United States. We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving.[10] Nor is there any liability "under like circumstances," for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons

---

[10] Cf. *Dinsman* v. *Wilkes*, 12 How. 390, and *Weaver* v. *Ward*, Hobart 135, 80 Eng. Rep. 284 (1616), as to intentional torts.

of command. The nearest parallel, even if we were to treat "private individual" as including a state, would be the relationship between the states and their militia. But if we indulge plaintiffs the benefit of this comparison, claimants cite us no state, and we know of none, which has permitted members of its militia to maintain tort actions for injuries suffered in the service, and in at least one state the contrary has been held to be the case.[11]  It is true that if we consider relevant only a part of the circumstances and ignore the status of both the wronged and the wrongdoer in these cases we find analogous private liability.  In the usual civilian doctor and patient relationship, there is of course a liability for malpractice. And a landlord would undoubtedly be held liable if an injury occurred to a tenant as the result of a negligently maintained heating plant.  But the liability assumed by the Government here is that created by "all the circumstances," not that which a few of the circumstances might create.  We find no parallel liability before, and we think no new one has been created by, this Act.  Its effect is to waive immunity from recognized causes of action and was not to visit the Government with novel and unprecedented liabilities.

It is not without significance as to whether the Act should be construed to apply to service-connected injuries that it makes ". . . the law of the place where the act or omission occurred" govern any consequent liability.  28 U. S. C. § 1346 (b).  This provision recognizes and assimilates into federal law the rules of substantive law of the several states, among which divergencies are notorious.  This perhaps is fair enough when the claimant is not on duty or is free to choose his own habitat and thereby limit the jurisdiction in which it will be possible for federal

---

[11] *Goldstein* v. *New York*, 281 N. Y. 396, 24 N. E. 2d 97.

activities to cause him injury. That his tort claims should be governed by the law of the location where he has elected to be is just as fair when the defendant is the Government as when the defendant is a private individual. But a soldier on active duty has no such choice and must serve any place or, under modern conditions, any number of places in quick succession in the forty-eight states, the Canal Zone, or Alaska, or Hawaii, or any other territory of the United States. That the geography of an injury should select the law to be applied to his tort claims makes no sense. We cannot ignore the fact that most states have abolished the common-law action for damages between employer and employee and superseded it with workmen's compensation statutes which provide, in most instances, the sole basis of liability. Absent this, or where such statutes are inapplicable, states have differing provisions as to limitations of liability and different doctrines as to assumption of risk, fellow-servant rules and contributory or comparative negligence. It would hardly be a rational plan of providing for those disabled in service by others in service to leave them dependent upon geographic considerations over which they have no control and to laws which fluctuate in existence and value.

The relationship between the Government and members of its armed forces is "distinctively federal in character," as this Court recognized in *United States* v. *Standard Oil Co.*, 332 U. S. 301, wherein the Government unsuccessfully sought to recover for losses incurred by virtue of injuries to a soldier. The considerations which lead to that decision apply with even greater force to this case:

> ". . . To whatever extent state law may apply to govern the relations between soldiers or others in the armed forces and persons outside them or nonfederal governmental agencies, the scope, nature, legal incidents and consequences of the relation between

persons in service and the Government are fundamentally derived from federal sources and governed by federal authority. See *Tarble's Case*, 13 Wall. 397; *Kurtz v. Moffitt*, 115 U. S. 487. . . ." Pp. 305–306.

No federal law recognizes a recovery such as claimants seek. The Military Personnel Claims Act, 31 U. S. C. § 223b (now superseded by 28 U. S. C. § 2672), permitted recovery in some circumstances, but it specifically excluded claims of military personnel "incident to their service."

This Court, in deciding claims for wrongs incident to service under the Tort Claims Act, cannot escape attributing some bearing upon it to enactments by Congress which provide systems of simple, certain, and uniform compensation for injuries or death of those in armed services.[12] We might say that the claimant may (a) enjoy both types of recovery, or (b) elect which to pursue, thereby waiving the other, or (c) pursue both, crediting the larger liability with the proceeds of the smaller, or (d) that the compensation and pension remedy excludes the tort remedy. There is as much statutory authority for one as for another of these conclusions. If Congress had contemplated that this Tort Act would be held to apply in cases of this kind, it is difficult to see why it should have omitted any provision to adjust these two types of remedy to each other. The absence of any such adjustment is persuasive that there was no awareness that the Act might be interpreted to permit recovery for injuries incident to military service.

---

[12] 48 Stat. 8 (1933), as amended, 38 U. S. C. § 701 (1946); 48 Stat. 11 (1933), as amended, 38 U. S. C. § 718 (1946); 55 Stat. 608 (1941), 38 U. S. C. § 725 (1946); 57 Stat. 558 (1943), as amended, 38 U. S. C. § 731 (1946); 62 Stat. 1219, 1220 (1948), 38 U. S. C. (Supp. III) §§ 740, 741 (1950).

A soldier is at peculiar disadvantage in litigation.[13] Lack of time and money, the difficulty if not impossibility of procuring witnesses, are only a few of the factors working to his disadvantage. And the few cases charging superior officers or the Government with neglect or misconduct which have been brought since the Tort Claims Act, of which the present are typical, have either been suits by widows or surviving dependents, or have been brought after the individual was discharged.[14] The compensation system, which normally requires no litigation, is not negligible or niggardly, as these cases demonstrate. The recoveries compare extremely favorably with those provided by most workmen's compensation statutes. In the *Jefferson* case, the District Court considered actual and prospective payments by the Veterans' Administration as diminution of the verdict. Plaintiff received $3,645.50 to the date of the court's computation and on estimated life expectancy under existing legislation would prospectively receive $31,947 in addition. In the *Griggs* case, the widow, in the two-year period after her husband's death, received payments in excess of $2,100. In addition, she received $2,695, representing the six months' death gratuity under the Act of December 17, 1919, as amended, 41 Stat. 367, 57 Stat. 599, 10 U. S. C. § 903. It is estimated that her total future pension payments will aggregate $18,000. Thus the widow will receive an amount in excess of $22,000 from Government gratuities, whereas she sought and could seek under state law only $15,000, the maximum permitted by Illinois for death.

[13] Relief was provided in the Soldiers' and Sailors' Civil Relief Act of 1940, 54 Stat. 1178, 50 U. S. C. App. § 501 *et seq.*

[14] *Brooks* v. *United States, supra* (discharged at time of suit); *Santana* v. *United States,* 175 F. 2d 320 (C. A. 1st Cir.) (suit by sole heirs); *Ostrander* v. *United States,* 178 F. 2d 923 (C. A. 2d Cir.) (suit by widow); *Samson* v. *United States,* 79 F. Supp. 406 (D. C. S. D. N. Y.) (suit by administrator); *Alansky* v. *Northwest Airlines,* 77 F. Supp. 556 (D. C. D. Mont.) (suit by widow and son).

It is contended that all these considerations were before the Court in the *Brooks* case and that allowance of recovery to Brooks requires a similar holding of liability here. The actual holding in the *Brooks* case can support liability here only by ignoring the vital distinction there stated. The injury to Brooks did not arise out of or in the course of military duty. Brooks was on furlough, driving along the highway, under compulsion of no orders or duty and on no military mission. A government owned and operated vehicle collided with him. Brooks' father, riding in the same car, recovered for his injuries and the Government did not further contest the judgment but contended that there could be no liability to the sons, solely because they were in the Army. This Court rejected the contention, primarily because Brooks' relationship while on leave was not analogous to that of a soldier injured while performing duties under orders.

We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law. We do not think that Congress, in drafting this Act, created a new cause of action dependent on local law for service-connected injuries or death due to negligence. We cannot impute to Congress such a radical departure from established law in the absence of express congressional command. Accordingly, the judgments in the *Feres* and *Jefferson* cases are affirmed and that in the *Griggs* case is reversed.

*Nos. 9 and 29, affirmed.*
*No. 31, reversed.*

Mr. Justice Douglas concurs in the result.