222 F.2d 942
 PREFERRED INSURANCE COMPANY, a Corporation; Michigan Surety Company, a Corporation; Midstates Insurance Company, a Corporation; and The Mercantile Insurance Company of America, a Corporation, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 13889.*
 United States Court of Appeals Ninth Circuit.
 May 9, 1955.
 
 1
 William H. Levit, Long & Levit, Los Angeles, Cal., for appellant.
 
 
 2
 Asst. Atty. Gen. Warren E. Burger, Paul A. Sweeney, Chief, Appellate Section, Dept. of Justice, Morton Hollander, Atty., Dept. of Justice, Washington, D. C., Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.
 
 
 3
 Before HEALY and BONE, Circuit Judges, and BOLDT, District Judge.
 
 
 4
 BOLDT, District Judge.
 
 
 5
 Appellee's motion to dismiss Appellants' complaints for lack of jurisdiction was heard and considered on the allegations of the complaints, an affidavit supporting the motion and a written stipulation of facts. The motion was granted and these appeals are from the judgments of dismissal.
 
 
 6
 At 10:00 p. m. on August 5, 1950 an Air Force B-29 airplane crashed at the Fairfield-Suisun Air Force Base in California a few seconds after takeoff. The plane exploded near a trailer park on the Base extensively damaging 17 trailers and property therein owned and used for residence by enlisted men and officers in active duty status and assigned to the Base at the time. Appellant insurers in the several cases consolidated on this appeal, pursuant to the terms of insurance policies issued to the owners of the trailers, paid them a total of $49,661 for the damage to the trailers. The insureds had no uninsured losses with respect to the fully insured trailers; however, other property damage was suffered by the insureds as a result of the same crash for which claims were submitted to the Air Force under the Military Personnel Claims Act of 1945, 31 U.S.C.A. § 222c, and paid, except for the property covered by insurance as provided by regulations under the Act.
 
 
 7
 The complaints, praying recovery against the United States in the amount referred to and asserting jurisdiction in the federal district court under the Federal Tort Claims Act, 28 U.S.C. § 1346, alleged that the crash resulted from negligent maintenance and operation of the plane and that by payment of the insurance policy claims the insurers became subrogated to the rights of their respective insureds to the extent of the payments.
 
 
 8
 The stipulation of facts shows: The trailers were the private property of the servicemen and the government had no interest therein. There were not sufficient public quarters on the Base to house the personnel assigned to the Base and in the surrounding area there was a critical housing shortage. The owners of the trailers were free to live off the Base and could leave it on the same basis as other personnel, but for the convenience and accommodation of personnel and for the mutual benefit of personnel and the Air Force the trailer park on the Base was established. The trailer park was not required in the operation of the Base, no one was required to use it and those who did so made voluntary application at their discretion for permission to park their trailers therein. Personnel using the park were required to pay rental to the government for the space assigned and also to pay for utilities furnished. The servicemen using the trailer park were entitled to and drew regular quarters allowance paid to personnel not furnished government quarters and who lived off the Base. The owners of the damaged trailers had no duties whatever with respect to the maintenance, servicing, loading, operation, dispatch or control of the plane which crashed. At the time of the crash the owners of the trailers, while in active duty status and assigned to the Base, were variously located both on and off duty in the trailer park, at other places on the Base, in neighboring communities and at other military installations in the United States and overseas.
 
 
 9
 The stipulation further shows: Detailed procedures controlling the operation and maintenance of the trailer park within the confines of the Base were prescribed in a Base regulation. Only Air Force personnel and their families assigned to the Base were allowed to use the trailer park facilities. Specific assignments and termination of trailer space were made by the Base billeting officer. Assignment of trailer park space automatically terminated when the Base ceased to be the permanent station of the individual concerned. The trailer park was operated as a nonprofit activity, with occupants charged a monthly fee determined by the billeting officer and a council of park occupants appointed by the Base commander. Repairs and removal of government property could be made by Air Force installation personnel only. The trailer park area was under military protection and subject to the jurisdiction of military police. Each of the damaged trailers had been permanently placed in position by jacks or other means for the duration of the owner's permanent assignment to the Base.
 
 
 10
 In the District Court opinion, 111 F. Supp. 899, it was held that the property damage sustained by appellants' insureds was incident to their military service within the meaning of the Military Personnel Claims Act; that claim under said Act is the exclusive remedy of a serviceman for service incident property damage; and that neither servicemen nor their insurers by subrogation have a right of action under the Federal Tort Claims Act for property damage so sustained. The two general questions presented on this appeal are: (1) Can one in active military duty status maintain a claim against the United States under the Tort Claims Act for property damage occurring incident to military service? (2) Was the property damage for which subrogation recovery is sought in the present cases incident to the service of appellants' insureds?
 
 
 11
 In Brooks v. U. S., 1949, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, the Supreme Court held that a serviceman injured while on leave and away from his duty station by the negligent operation of an army truck driven by a civilian employee could maintain an action under the Federal Tort Claims Act. Thereafter in Feres v. U. S., 1950, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, the Court held:
 
 
 12
 "We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at page 146, 71 S.Ct. at page 159.
 
 
 13
 In Johansen v. U. S., 1952, 343 U.S. 427, 440, 72 S.Ct. 849, 857, 96 L.Ed. 1051, the Court said:
 
 
 14
 "This Court accepted the principle of the exclusive character of federal plans for compensation in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. Seeking so to apply the Tort Claims Act to soldiers on active duty as `to make a workable, consistent and equitable whole,' 340 U.S. at page 139, 71 S.Ct. at page 156, we gave weight to the character of the federal `systems of simple, certain, and uniform compensation for injuries or death of those in armed services.' 340 U.S. at page 144, 71 S.Ct. at page 158."
 
 
 15
 Recently both Feres and Brooks have been approved in U. S. v. Brown, 1954, 348 U.S. 110, 112, 75 S.Ct. 141, 143:
 
 
 16
 "The Feres decision did not disapprove of the Brooks case. It merely distinguished it, holding that the Tort Claims Act does not cover `injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.' 340 U.S. 135, 146, 71 S.Ct. 153, 159. The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character. * * * We adhere also to the line drawn in the Feres case between injuries that did and injuries that did not arise out of or in the course of military duty."
 
 
 17
 Since the rule of Feres denying action under the Tort Act for service incident personal injuries has been so emphatically reaffirmed, whether the same rule applies to service incident property damage claims will depend on whether or not the rationale of the Feres decision is valid as to such claims.
 
 
 18
 The Feres opinion, after pointing out considerations persuasive of liability under the language of the Tort Act, the inadequacy of legislative history and the uncertainty or confusion created by the legislation, stated: "Under these circumstances, no conclusion can be above challenge, but if we misinterpret the Act, at least Congress possesses a ready remedy." 340 U.S. at page 138, 71 S.Ct. at page 155. The decision was unanimous and in the more than four years since it was rendered Congress has not amended the Tort Claims Act. Accordingly, the opinion must be accepted as dispelling any doubt as to congressional intent in the adoption of the Act. The four general considerations cited in the opinion as supporting the decision are indicated by the following quotations:
 
 
 19
 (1) "This Act, however, should be construed to fit, so far as will comport with its words, into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole." 340 U.S. at page 139, 71 S.Ct. at page 156.
 
 
 20
 (2) "The primary purpose of the Act was to extend a remedy to those who had been without; if it incidentally benefited those already well provided for, it appears to have been unintentional. Congress was suffering from no plague of private bills on the behalf of military and naval personnel, because a comprehensive system of relief had been authorized for them and their dependents by statute." 340 U.S. at page 140, 71 S.Ct. at page 156.
 
 
 21
 (3) "One obvious shortcoming in these claims is that plaintiffs can point to no liability of a `private individual' even remotely analogous to that which they are asserting against the United States. We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving." 340 U.S. at page 141, 71 S.Ct. at page 157.
 
 
 22
 (4) "This Court, in deciding claims for wrongs incident to service under the Tort Claims Act, cannot escape attributing some bearing upon it to enactments by Congress which provide systems of simple, certain, and uniform compensation for injuries or death of those in armed services." 340 U.S. at page 144, 71 S.Ct. at page 158.
 
 
 23
 Each of these considerations is as applicable to property damage incident to service as to personal injury incident to service.
 
 
 24
 The Military Personnel Claims Act of 1945, 59 Stat. 225, is a part of the statutory system of remedies against the government adopted by Congress. The Act provides a remedy for personal property loss or damage by service personnel sustained incident to their service, which is considerably more liberal, adequate and satisfactory than any of its predecessor acts over a period of many years.[1]
 
 
 25
 While the legislation preceding the Military Personnel Claims Act provided compensation for service incident property damage, not any of the previous acts created a right of action in the serviceman or liability on the government even for damage caused by negligence of a government agent or employee.[2] Payment of claims under all of the property claim acts has been a matter not of right but of grace resting in administrative discretion. None of the acts provided for judicial review of findings or action on claims. There never has been and is not now any act of Congress, unless it be the Tort Claims Act, authorizing a serviceman in active duty status to sue the government for service incident property damage, however inflicted.
 
 
 26
 As appears from the allowance and payment of claims under the Military Personnel Claims Act by appellants' insureds in these very cases, Congress has provided a simple, certain and uniform method of compensation for service incident property damage. This system avoids the serious disruption of military mission and discipline that well might follow civil litigation based on such claims.
 
 
 27
 We consider every essential element on which the Feres rule was based fully applicable to service incident property damage claims and therefore hold that Congress did not intend a serviceman in active duty status to have a right of action against the government under the Tort Claims Act for property damage occurring incident to his military service.
 
 
 28
 An insurer may sue under the Tort Claims Act upon a claim to which it has become subrogated by payment of a claim to an insured who would have been able to bring such action. U. S. v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171. However, "one who rests on subrogation stands in the place of one whose claim he has paid" and "it is elementary that one cannot acquire by subrogation what another whose rights he claims did not have." U. S. v. Munsey Trust Co., 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022. In the light of these principles we now consider whether the damage to the trailers of appellants' insureds under the particular circumstances of these cases was sustained incident to the military service of the insured.
 
 
 29
 Under the Military Personnel Claims Act, 59 Stat. 225, the Secretary of the Air Force and those officers designated by him for the purpose are authorized to "consider, * * * determine, * * * and pay any claim not in excess of $2,500 against the United States, * * * of military personnel * * * when * * * the property [is] determined to be reasonable, useful, necessary, or proper under the attendant circumstances, * * * for damage to or loss, * * * of personal property occurring incident to their service, * * * Provided, That the damage to or loss, * * * of property * * * shall not have occurred at quarters occupied by the claimant within the continental United States (excluding Alaska) which are not assigned to him or otherwise provided in kind by the Government." There is no definition of "incident to service" in the Act or in the Air Force regulations authorized by the Act but the regulations list a variety of examples of allowable and nonallowable claims. 32 C.F.R. 836.92-3.
 
 
 30
 The allowance and payment of the claims made under such Act by appellants' insureds for damage to personal property, other than the trailers, sustained in the same trailer park and as a result of the same airplane crash, must be presumed to have been based on an administrative determination that the property damage occurred "incident to service" since such is a requirement of the Act and regulations for allowable claims. The Act does not provide for judicial review of administrative action on claims; but even if it did, administrative findings of fact would have to be accepted by a court unless arbitrary, capricious or without evidentiary support. U. S. v. Babcock, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011; Dismuke v. U. S., 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561; Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733.
 
 
 31
 Inasmuch as the damage to the personal property for which claim was made under the Military Personnel Claims Act and the damage to the trailers for which claim is made under the Tort Claims Act in these cases was sustained by the same military personnel in the same accident, at the same time and place, and under identical conditions, there would be no factual or legal basis for holding the one service incident and the other not, unless the term "incident to service" has a different meaning under the Tort Claims Act than it has under the Military Personnel Claims Act. This is without regard either to the effect of the language in the Military Personnel Claims Act making the administrative determination "final and conclusive for all purposes, notwithstanding any other provision of law to the contrary" or to "the principle of the exclusive character of federal plans for compensation in Feres v. United States" as stated in Johansen and which has been applied by the Seventh Circuit in Sasse v. U. S., 201 F.2d 871 and by the District of Columbia Court of Appeals in Lewis v. U. S., 89 U.S.App.D.C. 21, 190 F.2d 22 to the Federal Employees Compensation Act, 5 U.S.C.A. § 751 et seq., in relation to claims asserted under the Tort Claims Act. Feres bars action under the Tort Claims Act for injuries "arising out of or incident to service;" the Military Personnel Claims Act authorizes claims for damage to property "occurring incident to * * * service." It may be that "arising out of" has a broader meaning than "incident to" although both appear to be different ways of saying the same thing. In any event, there is no logical basis or practical reason under the facts of the instant cases for holding that damage to the trailers could have been nonservice incident while the simultaneous damage to the other property of the same servicemen under identical circumstances was incident to their service.
 
 
 32
 Entirely aside from the filing of the claims by appellants' insureds under the Military Personnel Claims Act and the action taken thereon, the allegations of the complaints and the stipulated facts clearly show that the damage to the trailers of the servicemen arose out of and was in the course of activity incident to their military service.
 
 
 33
 At the time of the damage the trailer owners were all in active military duty status as distinguished from civilian or inactive military status. The trailers were permanently set up on land inside the Base in spaces specifically assigned by the Base billeting officer in an area absolutely subject to military control and discipline. The trailers were authorized to occupy the assigned spaces solely by virtue of the active military status of their owners. The fact that a serviceman be on furlough or leave may be material to whether his personal injuries be service incident or not according to where he is and what he is doing at the time of injury. In itself furlough or leave has no bearing on whether a serviceman's property be damaged incident to his military service. In the present cases, whether the owners of the trailers were on furlough or not is unimportant since the trailers were on the military base at the place of damage only because the owners were in active military duty status. The damage to the trailers resulted directly from the flight of an Air Force airplane operated in the course of military service. The crash of an airplane immediately following takeoff from an Air Force base certainly has a real and substantial relationship to the military service of any serviceman assigned to such base whether or not he has any direct part in the maintenance or operation of the particular plane. If, as in these particular cases, at the time of damage the personal property of a serviceman is located on a military base solely by virtue of the active military service of the owner, and the damage results directly from operations in military service, we hold that the damage does arise out of and occurs in the course of activity incident to the military service of the owner.
 
 
 34
 Lund v. U. S., D.C.Mass.1952, 104 F.Supp. 756 is the only cited case involving property damage which on essential facts similar but not identical to those of the present cases is to the contrary of our holdings herein. The opinion in that case acknowledges the difficulty of the problem which it disposes of in a few sentences and without persuasive analysis.
 
 
 35
 The judgments are affirmed.
 
 
 
 Notes:
 
 
 *
 Consolidated on appeal with Nos. 14001 to 14005, inclusive
 
 
 [1]
 The House and Senate Committees on Claims, reporting favorably on the bill which became the Act, stated:
 "The purpose of the proposed legislation is to provide a single, clear, definite, and workable statute for the settlement of claims of military personnel and civilian employees of the War Department or of the Army for the loss of their personal property incurred while in the service and to repeal certain statutes which have been found to be obsolete or unworkable and not appropriate to present conditions." (H.Rept. 237, 79th Cong., 1st sess., p. 1; S.Rept. 276, 79th Cong., 1st sess., p. 2; see 91 Cong.Rec. 1540, 3990, 4690.)
 As noted by the court below, the 1945 Act completed the original plan for consolidation into three separate statutes of all of the statutory settlement provisions affecting the Armed Forces. H.Rept. 237, 79th Cong., 1st sess., p. 3; S.Rept. 276, 79th Cong., 1st sess., p. 3. The first two statutes, the Foreign Claims Act, 57 Stat. 66, 31 U.S.C.A. § 224d et seq., and the Military Claims Act, 57 Stat. 372, were enacted in 1943. In referring to these two statutes and the need for enacting H.R. 2068 as the third and final statute, Secretary of War Patterson pointed out (H.Rept. 237, 79th Cong., 1st sess., p. 4):
 "By the passage of the act of April 22, 1943 (57 Stat. 66), commonly referred to as the Foreign Claims Act, the Congress made available to the War Department a thoroughly satisfactory and workable basis for the settlement of claims for damage caused by our armed forces in foreign countries.
 "The next forward step came with the passage of the act of July 3, 1943, which consolidated all then existing statutory provisions for the administrative settlement of claims other than claims under the Foreign Claims Act and claims of War Department and Army personnel.
 "The only field of statutory authorization with respect to military claims which has not been modernized to meet present conditions is that covering the claims of military personnel and civilian employees of the War Department or of the Army for damage to or loss, destruction, capture, or abandonment of personal property occurring incident to their service. Fair, just, and prompt administrative processing of these claims is of paramount importance, especially in time of war. The manner in which such claims are handled and the length of time required to effect payment or other final action has a direct effect upon morale in the Army and upon relatives and friends on the home front. At the present time, members of our armed forces and civilian employees of the War Department or of the Army stationed in all parts of the world are continuously subjected to hazards which result in loss, damage, or destruction of their personal property. It has become apparent that there is urgent need for new legislation to effect a fair, equitable, and uniform basis for the settlement of such claims.
 "Enactment of the enclosed bill would make possible the settlement by disapproval, replacement in kind, or payment in money, of claims for damage to or loss, destruction, capture, or abandonment of personal property coming within the provisions thereof to be effected, after appropriate investigation and recommendation, by the Secretary of War, with power to delegate such authority in appropriate classes of cases and under applicable Army regulations."
 
 
 [2]
 The Military Personnel Claims Act of March 3, 1885, 23 Stat. 350; The "Gunfire Act" of August 24, 1912, 37 Stat. 586; The Military Personnel Claims Act of July 9, 1918, 40 Stat. 880; The Military Personnel Claims Act of March 4, 1921, 41 Stat. 1436; The Small Tort Claims Act of December 28, 1922, 42 Stat. 1066; The Military Claims Act of July 3, 1943, 57 Stat. 372