**UNITED STATES of America,**
**Appellant,**

**v.**

**UNITED SERVICES AUTOMOBILE ASSOCIATION, a Reciprocal Insurance Association, Appellee.**

**No. 15591.**

United States Court of Appeals
Eighth Circuit.

Nov. 29, 1956.

Morton Hollander, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Harry Richards, U. S. Atty., St. Louis, Mo., and Paul A. Sweeney, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellant.

Joseph Nessenfeld, St. Louis, Mo. (Wilbur C. Schwartz, St. Louis, Mo., was with him on the brief), for appellee.

Before JOHNSEN, VAN OOSTERHOUT, and WHITTAKER, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by the United States from a judgment against it finding liability under the Federal Tort Claims Act, 28 U.S.C., §§ 2671–2680. The judgment was rendered in favor of the appellee as subrogee for reimbursement for the payment it had made to assured Lt. Stapelfeld, a Naval officer in active service, for damages to his automobile caused by the crash of a Navy plane. Jurisdiction of the trial court was based upon 28 U.S.C. § 1346(b).

The facts are stipulated. The trial court found that the plane crash which damaged the serviceman's car was proximately caused by the negligence of officers and employees of the United States Navy. Since there is no appeal from this finding, we forego setting out the evidence on this issue. The amount of damage is not in dispute.

As grounds for reversal, the United States urges that the property damage to the serviceman's automobile was service-incident in nature; that the Supreme Court held in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, that suits by active servicemen for service-incident personal injury claims can not be maintained under the Federal Tort Claims Act; and that the rationale of Feres applies with equal force to service-incident property damage claims. We set out the facts bearing on these issues.

At all times here material Lt. Stapelfeld was a Naval officer on active duty, assigned to the Naval Air Station at Lambert Field, St. Louis, Missouri. He was quartered on the base at the Bachelor Officers Quarters. He kept his car on the base, parking it in an official parking lot adjoining the Bachelor Officers Quarters. The parking lot was about a quarter mile from the flying field. The Naval Air Station was enclosed by a fence. Access to the Station, including the parking lot and Bachelor Officers Quarters, was by means of a guarded gate. No persons were permitted to enter the gate except members of the Navy assigned to the Air Station, persons having official business at the Station, and authorized visitors. Persons authorized to enter the Air Station were permitted to take their vehicles with them and park them on the parking lot to the extent that space was available. Lt. Stapelfeld kept his car at the Naval Air Base for his personal convenience and pleasure. The car was neither required, nor used, for the performance of official duties. At the time Lt. Stapelfeld's car was damaged by the crashing plane, the car was parked upon the parking lot within the Navy Air Base enclosure. Lt. Stapelfeld, at the time of the crash, was performing official duties elsewhere upon the base. His duties, however, had nothing to do with the maintenance or operation of the plane involved in the crash.

We shall first briefly refer to the subrogation issue discussed by both

parties. An insurer has a right to sue under the Tort Claims Act on a claim to which it has become subrogated by payment to an insured who would have been able to bring such action. United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171. The subrogee stands in the place of one whose claim he has paid. "It is elementary that one cannot acquire by subrogation what another whose rights he claims did not have." United States v. Munsey Trust Co., 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022; Preferred Insurance Co. v. United States, 9 Cir., 222 F.2d 942, 946. An insurer can take nothing by subrogation except such rights as the insured had. Since the rights of the appellee as subrogee depend upon the rights of Lt. Stapelfeld, its insured, we proceed to the problem of whether Lt. Stapelfeld, under the facts disclosed in this case, had a cause of action against the United States under the Federal Tort Claims Act.

■ The Supreme Court in Feres squarely held that the United States is not liable under the Federal Tort Claims Act for personal injuries to members of the armed forces sustained while on active duty and resulting from the negligence of others in the armed forces. The Court in Feres assigns a number of reasons for denying the serviceman relief under the Tort Claims Act, among them the following:

(a) The purpose of the Tort Claims Act was to relieve Congress of the plague of private bills to adjust damage claims, Congress was not bothered by demands for such bills by the military personnel because of the comprehensive system of relief already established for them, and the absence of a provision in the Tort Claims Act for adjustment of relief under the existing law and the new relief afforded are persuasive that Congress intended the Tort Claims Act to be interpreted to prohibit recovery of damages for injuries incident to military service.

(b) The Tort Claims Act creates liability upon the part of the Government to the same extent as a private individual under like circumstances, and there is no analogous liability on the part of private individuals. There is no American law which has permitted a soldier to recover for negligence against his superior officer or his Government.

(c) Under the Tort Claims Act liability is determined by the law of the place where the act or omission occurs. The fact that the geography of his injury should select the state law to be applied makes no sense and is unfair to the soldier who has no choice as to his location, particularly because of wide variances in local law. The relations between persons in service and the Government are fundamentally derived from federal sources and should be governed by a federal law. In the absence of the expression by Congress of a clear intent to make such a radical departure from established law, Congress can not be said to have intended to create for servicemen a new cause of action dependent upon local law.

The Supreme Court in Feres states that the distinguishing feature of Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, which held that a serviceman on furlough could recover under the Tort Claims Act, is the fact that Brooks was on furlough and not on active duty at the time of the accident. In United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139, both the Feres and Brooks decisions are approved. The Court held the Brown case was governed by Brooks since the damage occurred after the serviceman's discharge from service, although the damage was caused by negligent treatment of a service-incurred injury. The Court thus speaks of Feres, 348 U.S. at pages 112–113, 75 S.Ct. at page 143:

"* * * The Feres decision did not disapprove of the Brooks case. It merely distinguished it, holding that the Tort Claims Act does not cover 'injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.' 340 U.S. 135, 146, 71 S.Ct.

153, 159 [95 L.Ed. 152]. The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character.

\* \* \* \* \* \*

" \* \* \* We adhere also to the line drawn in the Feres case between injuries that did and injuries that did not arise out of or in the course of military duty. \* \* \* "

In Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48, the majority of the Court found liability under the Tort Claims Act for damages caused by the negligence of the Coast Guard in maintaining a lighthouse. The Court of Appeals and four justices felt liability should be denied on the reasoning of Feres, and Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L. Ed. 1427. The majority held otherwise, but thus speaks of Feres, 350 U.S. at page 69, 76 S.Ct. at page 127:

" \* \* \* Feres held only that 'the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law.' \* \* \* "

Feres was decided by a unanimous Court. The rule there announced has been steadfastly adhered to.

Feres involved claims for personal injuries by a serviceman in active service. In our present case, property damages to an active serviceman's private automobile, which he was authorized to have with him on the base, are involved. In Preferred Insurance Co. v. United States, supra, the Ninth Circuit fully considered the question of whether an active serviceman could recover under the Federal Tort Claims Act for damages to his personal property located on the military base where the damages arose out of an activity incident to the military service of the owner. The court, after giving careful consideration to all of the reasons which entered into the decision of Feres and the later decisions of the Supreme Court referring to Feres, concluded, 222 F.2d at page 946:

"We consider every essential element on which the Feres rule was based fully applicable to service incident property damage claims and therefore hold that Congress did not intend a serviceman in active duty status to have a right of action against the government under the Tort Claims Act for property damage occurring incident to his military service."

The factual situation in the Preferred Insurance Co. case is very similar to that in our present case. There, house-trailers located on the base, belonging to active servicemen stationed there, were damaged by a crashing base plane. The servicemen had been permitted to park their trailers at the base, but were not required to do so. They did not have to live on the base.

Other courts have held the United States is not liable under the Federal Tort Claims Act to a serviceman on active duty for property damage incident to military service. Zoula v. United States, 5 Cir., 217 F.2d 81; Fidelity-Phenix Fire Ins. Co. of New York v. United States, D.C.N.D.Cal., 111 F.Supp. 899; Ritzman v. Trent, D.C.E.D.N.Car., 125 F.Supp. 664; Wallis v. United States, D.C.E.D.N.Car., 126 F.Supp. 673. The only contrary holdings upon this issue which we have found are the unreported District Court decision in the present case and Lund v. United States, D.C.D.Mass., 104 F.Supp. 756.

We believe that the results reached in the Preferred Insurance Co. case, and the other cited cases reaching the same

conclusion, are based upon sound reasoning. The reasons which led the Supreme Court to refuse an active serviceman relief under the Federal Tort Claims Act for personal injuries, as set out in Feres, appear to be equally persuasive as to service-incident property damage.

Appellant argues that in any event the damage to Lt. Stapelfeld's automobile was not incident to his military service. The trial court made no express finding upon the incident to service issue. However, it would appear that if the trial court had felt that the property damage was not incident to service, he could easily have said so. Such finding would have been decisive of the case, as it is clear the Feres rule would not apply if the damage was not service-incident. The trial court rejected the reasoning of the Preferred Insurance Co. case and other cases reaching the same result. It would not have been necessary for the court to have reached this issue if the damage was not incident to service.

The words "incident to service" appear in the Military Personnel Claims Act, granting servicemen relief for property damage. 31 U.S.C.A. § 222c. The legislative history of this act and the regulations promulgated thereunder are fully discussed and set out in Fidelity-Phenix Fire Ins. Co. of New York v. United States, supra. The court in that case finds an intention on the part of Congress that the words "incident to service" are to be liberally construed. See also Wallis v. United States, supra.

We have heretofore stated that the facts in the present case are similar from a legal aspect to those in the Preferred Insurance Co. case. Upon the issue we are now considering the court said, 222 F.2d at page 948:

"* * * If, as in these particular cases, at the time of damage the personal property of a serviceman is located on a military base solely by virtue of the active military service of the owner, and the damage results directly from operations in military service, we hold that the damage does arise out of and occurs in the course of activity incident to the military service of the owner."

In Zoula v. United States, supra, damage to an active serviceman's private automobile, which was being operated on the base for purely personal purposes, caused by the negligent operation of an Army ambulance was held to be incident to military service.

■ We are satisfied the damages caused Lt. Stapelfeld's car under the circumstances of this case were service incident.[1] It is entirely true that Lt. Stapelfeld had the car on the base for his personal convenience and pleasure, and that it was neither required nor used by him in performing his military duties. However, Lt. Stapelfeld was permitted to have his car on the base and to park it on the base parking lot, and it was on such lot at the time the crashing plane hit it. It was because of his active service status that his car, like his clothes and other personal effects, was upon the base with him.

The judgment appealed from is reversed.

1. The Government, in an appendix to its brief, sets out the proceedings whereby Lt. Stapelfeld filed a claim under the Personnel Claims Act for damage to golf clubs and tools located in his car at the time of the crash, which claim was allowed and paid. The Government contends such payment was predicated upon an administrative determination that the property loss was incident to Lt. Stapelfeld's military service, and that such determination under the act is final and conclusive for all purposes.

Since the record of this claim and its allowance was not introduced in evidence in the trial court and said court did not have an opportunity to consider it in making his decision, we do not believe this evidence is properly before us, and we give it no consideration.