289 F.2d 171
 Mrs. Robert F. CALLAWAY, individually, Mrs. Robert F. Callaway, as Mother and Next Friend of her Minor Children, Robert F. Callaway, Jr., Sandra K. Callaway and Richard E. Callaway, Appellants,
v.
W. L. GARBER and United States of America, Appellees,
Stanley P. SORENSON, as Administrator of the Estate of Robert F. Callaway, Deceased, Appellant,
v.
W. L. GARBER and United States of America, Appellees.
 No. 16889.
 United States Court of Appeals Ninth Circuit.
 April 21, 1961.
 
 Myles J. Thomas, Helena, Mont., for appellants.
 George Cochran Doub, Asst. Atty. Gen., Morton Hollander and Mark R. Joelson, Attys. for the Dept. of Justice, Washington, D. C., Krest Cyr, U. S. Atty., Butte, Mont., for appellees.
 Before CHAMBERS, ORR and HAMLIN, Circuit Judges.
 ORR, Circuit Judge.
 
 
 1
 On May 3, 1957, W. L. Garber, a recruiting officer in the United States Navy, while operating his car on Navy business on a highway in Broadwater County, Montana, negligently drove said car into the rear-end of another auto which was owned and operated by Sergeant Carl J. Lange of the United States Air Force. Riding with Sergeant Lange at the time were two other Air Force sergeants, Robert F. Callaway and George F. Strong. The impact of the collision forced Sergeant Lange's car into the opposite lane where it collided with an auto being driven by one Angus McArthur, a civilian. Sergeant Callaway received injuries from which he died about one hour after the accident.
 
 
 2
 At the time of the accident the three Air Force sergeants in Lange's car were traveling from Ellsworth Air Force Base in South Dakota to Seattle, Washington, to attend a special school at the Boeing Aircraft Plant in Seattle for six weeks. Their orders required them to leave South Dakota on May 2nd and report in Seattle on May 8th, but no means of transportation was provided or specified and they were free to do anything they wished and travel in any manner they desired so long as they reported in Seattle on May 8th. At the end of the six weeks of schooling they were to return to Ellsworth Air Force Base in South Dakota, and during the entire period they were to remain assigned to that base and subject to the orders of its Commander. The purpose of their journey was to receive training with respect to a new model of aircraft which was to be received at Ellsworth Air Force Base.
 
 
 3
 Mrs. Robert F. Callaway, individually and as mother and next friend of her minor children, brought a suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq., and against W. L. Garber, alleging that Sergeant Callaway's death had been caused by Garber's negligent driving while he was within the scope of his employment for the Government. Stanley P. Sorenson, administrator of Sergeant Callaway's estate, brought a similar suit. The United States District Court for the District of Montana entered judgment for the defendants in both suits, holding that Sergeant Callaway was acting in the line of duty at the time he was fatally injured and that the doctrine of Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, therefore controls the case. Appellants seek review of these findings.
 
 
 4
 The Feres case, supra, was actually a consolidation of three different suits by or on behalf of servicemen injured while on active duty and as a result of negligence of other servicemen; one suit involved a soldier who had perished by fire while in his barracks, and the other two involved soldiers who had suffered injuries while receiving treatment from army surgeons. The Supreme Court, in holding for the Government, promulgated a rule that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at page 146, 71 S.Ct. at page 159. In reaching this decision the Court mentioned the following considerations: (1) The Tort Claims Act was designed to extend a remedy to those who had previously been without one, and this does not include servicemen, who are allowed compensation for service injuries under several special statutes. In addition the fact that Congress failed to provide any adjustment between those special remedies and the Tort Claims Act indicates that it did not intend both to apply at once. These considerations alone would not seem to be determinative since in Brooks v. United States, 1949, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, and in United States v. Brown, 1954, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139, an injured serviceman and a veteran were allowed to recover under the Tort Claims Act even though they were covered by special injury compensation statutes. (2) Under the Tort Claims Act the United States is only liable to the extent a private individual would be liable under like circumstances.[1] Considering the unique status of the wronged and the wrongdoer in these service injury cases as part of the circumstances, there is no analogous private situation and thus no analogous private liability to apply. (3) The Tort Claims Act rests liability on the law of the place where the act or omission occurred, and it would be irrational to have this rule govern servicemen on active duty since they have no power to choose or determine where they will be at any given time. It is arguable that this consideration is not present in the instant case since Sergeant Callaway was free to get to Seattle in whatever way and by whatever route he chose.
 
 
 5
 The Trial Court held that this case falls within the rule in Feres v. United States that [340 U.S. 135, 71 S.Ct. 159] "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." The question is: did the injury to Callaway arise out of or in the course of activity incident to service? His travel at the time of the injury was incident to service. Without travel he could not respond to the orders of his superior. The objective of the orders was to provide training. The place where that training was to be provided was at a distance from his base. The travel was as much a part of his duty as the training itself. The person responsible for the injury was another serviceman following out and in the course of his duties.
 
 
 6
 Appellant argues that Chapin v. United States, 9 Cir., 1958, 258 F.2d 465 should control the instant case. In the Chapin case a private citizen was injured by the negligence of a serviceman who was driving his own car in the course of a permanent change of duty station. This court held that the question whether the United States was responsible for the serviceman's negligent acts is determined by the "respondeat superior" laws of the state where the accident occurred, and under the California respondeat superior laws this serviceman was not acting within the scope of his employment. That the local respondeat superior laws determine the responsibility of the United States for the negligence of servicemen is well established. Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761. However, assuming that such responsibility has been thus established, whether the injured party can collect from the United States when the injured party is also a serviceman is a matter for federal law. Feres v. United States, 1950, 340 U.S. 135, 143-144, 71 S.Ct. 153, 159, 95 L.Ed. 152. The test here is whether the injured serviceman was engaged in "activity incident to service" at the time he was injured. That this is a much broader test than the "scope of employment" test used for respondeat superior purposes is clear from the facts of the Feres case itself and from the numerous circuit court cases which have interpreted and applied Feres. See Preferred Insurance Co. v. United States, 9 Cir., 1955, 222 F.2d 942, denying servicemen recovery for damage to their housetrailers caused by an airplane crash while the trailers were on the Air Force Base, because the trailers were "damaged incident to * * * military service". 222 F.2d at page 948. See also Zoula v. United States, 5 Cir., 1954, 217 F.2d 81. In the instant case, unlike Chapin, the negligence of the Government is admitted and the issue is whether the injured party is barred from recovering by the fact that he was a serviceman — a question to which the rule announced in Feres must be applied.
 
 
 7
 We are unable to determine wherein the instant case fails to fall within the rule announced by the Supreme Court in Feres. True the facts here are of an isolated nature and could be said to be not within the contemplation of the Supreme Court in deciding the Feres case. If such be true it is not for this court to make the distinction. The Supreme Court in United States v. Brown, supra, has indicated the basic reasons underlying the Feres rule. "The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character." 348 U.S. at page 112, 75 S.Ct. at page 143. The instant case can find no shelter within those reasons, since the negligent and injured parties here were members of different branches of the service and were engaged in entirely different and unconnected activities at the time of the accident. However, the instant case does fall within the rule of the Feres case as promulgated, and we must adhere to said rule since it was in no way negated or modified by the later Brown case.
 
 
 8
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 1346(b) of Title 28 U.S.C., provides in pertinent part:
 "(b) Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of place where the act or omission occurred.