Jacob W. KNOCH and William Larry Knoch, a Minor, by Jacob W. Knoch, his Guardian ad Litem, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17763.

United States Court of Appeals Ninth Circuit.

April 1, 1963.

Francis Berton Perry and Leslie C. Gillen, San Francisco, Cal., for appellants.

Joseph D. Guilfoyle, Asst. Atty. Gen., Morton Hollander, John C. Eldridge, Attys., Dept. of Justice, Washington, D. C., and Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and BOWEN, District Judge.

HAMLIN, Circuit Judge.

Jacob W. Knoch and William Larry Knoch, a minor, by Jacob W. Knoch, his guardian ad litem, appellants herein, filed an action in the United States District Court for the Northern District of California, seeking damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, et seq., for injuries sustained by appellant William Larry Knoch resulting from the alleged malpractice of a Navy doctor. The district court found that the doctor had been guilty of malpractice which proximately caused injury to William Larry Knoch, but awarded judgment in favor of the United States of America, appellee herein, on the ground that appellants were not eligible for relief under the Tort Claims Act, because of William Larry Knoch's military status at the time of his injury. A timely appeal from the judgment of the district court was filed, and we have jurisdiction under the provisions of 28 U.S.C. § 1291.

William Larry Knoch enlisted in the United States Naval Reserve on June 12, 1956, for a period of six years. Under the terms of his enlistment he was obligated to spend two years on active duty with the Navy, three years in the ready reserve, during which time he was required to attend weekly drills and one year in the standby reserve. On the date of his enlistment, after passing his physical examination and being formally sworn into the Navy, Knoch, instead of beginning immediately his two years active duty, was issued orders for inactive duty training with the ready reserve. Thereafter, until March 1, 1957, he at-

tended weekly drills in addition to two weeks of boot camp training in August, 1956.

On March 1, 1957, Knoch received from the Commandant, Twelfth Naval District, orders with respect to his two-year active duty obligation. These orders were entitled, "Orders to Active Naval Service" and they read in pertinent part as follows:

"* * * you will report at 0830, 13 March 1957 to the Officer in Charge, U. S. Navy Recruiting Station Room 48 Fed. Off. Bldg., San Francisco, California for a physical examination. You are ordered to an active naval status for this purpose and you will be considered in an active naval status during the time required for this physical examination and for travel if necessary for compliance with these orders."

The orders further provided that if Knoch was found physically unqualified, he was to return to his home and upon arrival thereat consider himself "released to inactive duty until receipt of further orders," but that if he was found physically qualified, he was to return home immediately and upon arrival thereat was to consider himself "released to inactive duty until such time as is necessary for you to proceed and report not later than 2400, 31 March 1957" to the Naval Training Center, San Diego, for outfitting, recruit training and further assignment.

On March 13, 1957, Knoch reported for his physical examination, during which the Navy doctor told Knoch that there was wax in his left ear. According to Knoch, he "referred me to a corpsman who said he was going to irrigate the ear. I asked him if he was going to use water, and he said yes. I explained that no water was supposed to be used in my ear. He said, 'Young man, you are in the Navy now. We know what we are doing.' Under the pressure used, the inner ear drum was punctured. The ear bled freely and I was sent to sick bay." Knoch was thereafter given a hearing test and was unable to hear anything in his left ear. Later he was told that he was not physically qualified and that he should report back to Sacramento, California, where he lived, to await further orders.

On March 18, 1957, his orders to active naval service were cancelled with a notation "Not physically qualified—suspended status list." On April 5, 1957, he was transferred to the standby reserve, the order stating that he had been found "not physically qualified for active duty."

According to Navy regulations, Knoch was entitled to pay during the period of his examination, including his travel time, but he never asked for or received such pay. Since March 13, 1957, Knoch did not ask for or receive medical aid from the Navy for his ear condition.[1] He has been treated since that time by his own doctors.

The sole issue on this appeal is whether Knoch was precluded from recovering under the Federal Tort Claims Act [2] due

1. Appellee points out in its brief that at the hearing in the district court, government counsel, on behalf of the Navy, offered to have an ear operation performed by the Navy.
2. Sections 1346(b) and 2674 of Title 28 U. S.Code provide in pertinent part:

§ 1346(b). "Subject to the provisions of Chapter 171 of this title, the district courts, * * *, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

"§ 2674. The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

to his military status at the time of his alleged injury.

■ The Supreme Court in Feres v. United States [3] held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." In that decision, which involved three separate cases, the court stated,[4] "The common fact underlying the three cases is that each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces." Subsequently, in United States v. Brown,[5] the Supreme Court adhered to "the line drawn in the Feres case between injuries that did and injuries that did not arise out of or in the course of military duty," and as to the former stated:

> "The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act

were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character." [6]

■ We feel that the holding of the Supreme Court in Feres is controlling in this case.[7] The district court's finding that Knoch was in an active duty status at the time of his injury is supported by the evidence. Although appellants argue that the active duty was of the "most ephemeral type possible," the decision in the Feres case is not predicated upon the length of time an individual has been or will be on active duty, but rather upon his military status at the time of his injury.[8] Knoch was in an active duty status at the time of his injury and it is clear from the stated facts that his injury was incurred in the course of an activity incident to that service. While his claims may be said under the circumstances to have a sympathetic appeal, we hold that he is not entitled to recover under the Federal Tort Claims Act.

Judgment affirmed.

3. 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950).

4. Id. at 138, 71 S.Ct. at 155.

5. 348 U.S. 110, 113, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954).

6. Id. at 112, 75 S.Ct. at 143. The Supreme Court held, however, that on the facts of the Brown case the negligent act there involved was not incident to military service.

7. See also, Preferred Insurance Co. v. United States, 222 F.2d 942 (9th Cir., 1955); Norris v. United States, 229 F.2d 439 (2nd Cir., 1956); United States v. United Services Automobile Ass'n, 238 F.2d 364 (8th Cir., 1956); Callaway v. Garber, 289 F.2d 171 (9th Cir., 1961); Healy v. United States, 295 F.2d 958 (2nd Cir., 1961).

8. Appellants also point to the fact that the Supreme Court in the Feres case discussed the comprehensive system of compensation provided for military person-

nel and argue that Knoch, because of his short period of active duty, is not entitled to such benefits. The district court, however, found that Knoch was entitled to medical care, surgery, hospitalization and pay from the United States when he was injured and appellants have cited no authorities which support a different conclusion. In this regard, see 10 U.S.C. § 6148(a) and Adams v. United States, 118 F.Supp. 381, 127 Ct.Cl. 470 (1954) concerning the entitlement of naval reservists to such benefits when called to active duty "for any period of time." Further, despite the discussion of the Supreme Court in the Feres case concerning the military compensations system, the overriding basis of the decision would appear to be the relationship of the soldier or sailor to his superiors and the exigencies of military discipline. See United States v. Brown, notes 5 and 6 supra; Healy v. United States, 192 F.Supp. 325, 328 (S.D.N.Y. 1961), aff'd. 295 F.2d 958 (2nd Cir. 1961).