Frederick C. STAUBER,
Plaintiff–Appellant,

v.

Richard A. CLINE; Fred C. Scharper; Ray Dugan, Defendant–Appellee,

and

State of Alaska; Department of Military and Veterans Affairs, Office of the Adjutant General; State Review, State Review and Appeals Board, Defendants.

No. 86–4233.

United States Court of Appeals,
Ninth Circuit.

Argued June 4, 1987.

Submitted July 2, 1987.

Decided Jan. 20, 1988.

Joseph N. Barcott, Anchorage, Alaska, for plaintiff-appellant.

Malcolm Logan, Asst. U.S. Atty., Anchorage, Alaska, for defendant-appellee.

Before POOLE and CANBY, Circuit Judges, and RAUL RAMIREZ,* District Judge.

CANBY, Circuit Judge:

The issue before us is whether intramilitary immunity bars a state-law tort action between civilian technicians for the Alaska Army National Guard who were also necessarily National Guard members when the actions arose, and whether the district court correctly held that plaintiff's injuries arose incident to military service. We conclude that defendants are immune under the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and affirm the district court's dismissal for lack of jurisdiction.

## BACKGROUND

Plaintiff-appellant Frederick C. Stauber and defendant-appellees Richard A. Cline, Fred C. Scharper, and Ray Dugan were mechanics working as dual-status employees of the National Guard. Civilian National Guard mechanic-technicians must also be members of the National Guard, as a condition of their civilian employment. 32 U.S.C. §§ 709(b), 709(e)(1) & (2).[1] Defendants were superior in rank to Stauber, although only Cline had direct authority over him. All worked in an on-base National Guard maintenance shop in Anchorage, Alaska.

Stauber sued Cline, Scharper and Dugan in state court for intentional infliction of emotional distress and libel. He alleged that the three defendants, over a five-year period, continuously harassed him, both on- and off-base, during regular work-duty hours and after hours.[2] Stauber also con-

---

* Honorable Raul Ramirez, United States District Judge, Eastern District of California, sitting by designation.

1. *See also* 32 U.S.C. § 709(d), which provides: A technician employed under [32 U.S.C. § 709(a)] is an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States.

2. Stauber contended that the defendants' conduct included:

harassment and intimidation in the use of sirens and horns and other noisemaking devices, all directed at plaintiff; forcing plaintiff to leave his work area door open so as not to be able to shut the noise out while others were allowed to close their doors; allowing everyone in the work area except plaintiff to use ear protectors; forbidding plaintiff from working outside; following plaintiff in his automobile with sirens and horns directed at plaintiff; physically pushing plaintiff; threatening to make negative reports about plaintiff to plaintiff's superiors; maliciously and inten-

tended that defendants, not under color of their military authority and outside their line of duty, made statements to third parties that harmed his reputation. Before filing his action, Stauber attempted to utilize a grievance process at his workplace and spoke with union representatives; he began receiving poor job evaluations from Cline, his immediate supervisor.[3]

Defendants successfully petitioned for removal to the district court under 28 U.S.C. §§ 1441(a) & 1442(a)(1),[4] where Stauber won a jury award of $106,000 in compensatory and punitive damages.

Defendants made five post-trial motions. The district court was distressed by defendants' imprecision and delay, but felt compelled to consider the late-raised claim of *Feres* immunity as a nonwaivable issue of subject matter jurisdiction. *See* Fed.R. Civ.P. 12(h)(3). The court determined that "at the time Plaintiff's claims arose, all parties were National Guardsmen working on a military installation under the direct command of a uniformed, full-time U.S. Army lieutenant colonel." Order on Motion to Dismiss & For Relief From Judgment Granted at 5, *Stauber* (No. A83–613). The record reflected that the employment and command structure, and the relative rank of the technicians, was the same whether the parties were on active duty on weekends or in civilian status during the week. During both periods, work in the on-base maintenance shop was essentially the same, and was governed by military regulations and standard operating procedures. The court assumed that, for some purposes, the parties were civilian employees of the Army, but nonetheless held that [t]his does not alter the fact that Plaintiff and Defendants were also Army National Guardsmen who performed the

tionally disrupting, disorganizing, and sabotaging plaintiff's work area; hiding and rearranging parts and tools and jamming plaintiff's toolbox closed; excluding only plaintiff from use and possession of keys to the common work area; driving back and forth in front of plaintiff's [off-base] home; and representing to plaintiff that eventually defendants would succeed in getting plaintiff fired from his position as a civilian technician. Amended Complaint ¶ VIII.

maintenance and repair work on vehicles and equipment used by the Army National Guard. Indeed, Plaintiff and Defendants used this equipment on weekends when they were on active duty. The work performed by Plaintiff and Defendants was beyond any question incident to military service. The *Feres* doctrine therefore applies, and Defendants are immune from suit.

*Id.* at 5. The court therefore set aside judgment on the verdict and dismissed Stauber's action.

## DISCUSSION

### I. WAIVER OF *FERES* IMMUNITY

■ Stauber argues that the district court erred in considering *Feres* immunity because defendants failed to raise the issue as an affirmative defense. The district court adopted defendants' position that the immunity could not be waived because it is an issue of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3); *see Jablonski by Pahls v. United States*, 712 F.2d 391, 394–95 (9th Cir.1983); *Beers v. Southern Pac. Transp. Co.*, 703 F.2d 425, 429 (9th Cir. 1983). We review *de novo* the district court's decision to consider appellees' late claim of intramilitary immunity. *E.g., United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

In *Feres v. United States*, the Supreme Court held that members of the armed services could not sue the government for injuries that "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159, *quoted in United States v. Johnson*, — U.S. —, 107 S.Ct. 2063, 2066, 95 L.Ed.2d 648 (1987).

3. Although Stauber ultimately was terminated from his employment, this tort action concerns events occurring before his termination only.

4. Stauber resisted removal and twice moved for remand to state court, but does not presently challenge the district court's jurisdiction. In its pretrial jurisdictional rulings, the district court found that the defendants were federal officers acting under color of their authority.

The Court grounded its ruling on the fact that relations between the government and its military personnel were "distinctively federal in character," exclusively governed by federal law, and that a comprehensive, even-handed government compensation scheme was available for service-connected injuries. *Feres*, 340 U.S. at 143–45, 71 S.Ct. at 158–59. Later Supreme Court decisions emphasized the effect that private lawsuits might have on military discipline. *See, e.g., United States v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985); *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977).

In cases arising under the Federal Tort Claims Act, we have viewed the *Feres* doctrine as a limitation on the jurisdiction of the courts. *Atkinson v. United States*, 825 F.2d 202 (9th Cir.1987); *Millang v. United States*, 817 F.2d 533, 534–35 (9th Cir.1987); *Bon v. United States*, 802 F.2d 1092, 1094 (9th Cir.1986); *Broudy v. United States*, 661 F.2d 125, 128 n. 5 (9th Cir. 1981); *Monaco v. United States*, 661 F.2d 129, 131 (9th Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). Although *Feres* itself did not compel dismissal for lack of subject matter jurisdiction, such a result comports with the development of the doctrine, which has grown as a judgemade exception to the Federal Tort Claims Act's (FTCA's) waiver of sovereign immunity.[5]

In contrast to *Atkinson, Millang, Bon, Broudy,* and *Monaco*, Stauber's action does not depend on any waiver of the sovereign immunity of the United States to establish jurisdiction. He brought his action in state court against the individual defendants, and federal jurisdiction was acquired by removal. Although Stauber makes no point of this distinction, it has a potential effect on the jurisdictional question. When *Feres* is applied as an exception to Congress's waiver of sovereign immunity in the Federal Tort Claims Act, it is an easy step to say that the exception takes the case out of the waiver, and that the federal court has no jurisdiction to entertain a suit against the sovereign. That analysis cannot apply here, because no action against the sovereign is before us.

Nevertheless, we conclude that the *Feres* doctrine, in light of the reasoning underlying it, occupies a position comparable to a restriction on subject matter jurisdiction, so that the district court was correct to apply the doctrine despite its untimely invocation. As we will more fully explain in dealing with the district court's ruling on the merits of the *Feres* issue, the *Feres* doctrine has come to rest at least in significant part on the view that the judiciary ought not to intrude in military affairs.[6] Thus the *Feres* rule has been interpreted as necessary to avoid the courts' second-guessing military decisions, or impairing military discipline. *Shearer*, 473 U.S. at 57, 105 S.Ct. at 3043; *see Chappell v. Wallace*, 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). Indeed, courts have even been viewed as " 'ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.' " *Chappell*, 462 U.S. at 305, 103 S.Ct. at 2368 (quoting Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 187 (1962)).

---

5. *Feres* was not a jurisdictional case. In its decision, the Court stated that "[j]urisdiction of the [government] now exists [under the Federal Tort Claims Act] where the [government] was immune from suit before; it remains for courts, in exercise of their jurisdiction, to determine whether any claim is recognizable in law." *Feres*, 340 U.S. at 141, 71 S.Ct. at 157.

6. Declining to permit review of National Guard internal operations on justiciability grounds, in *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2445, 37 L.Ed.2d 407 (1973), the Supreme Court noted that

it is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches. *Id.* (emphasis in original), *quoted in Chappell v. Wallace*, 462 U.S. 296, 302, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983); *see Sebra v. Neville*, 801 F.2d 1135, 1140–41 (9th Cir.1986).

Thus the *Feres* doctrine, as presently interpreted, has far more to do with the proper relation between the courts, Congress and the military than it has to do with individual defendants. It is not a matter of personal immunity of the military personnel who may be defendants in a *Bivens*-type action incident to military services. *United States v. Stanley*, —— U.S. ——, 107 S.Ct. 3054, 3064, 97 L.Ed.2d 550 (1987). It is a judicial doctrine leaving matters incident to service to the military, in the absence of congressional direction to the contrary. For these reasons, we conclude that the district court was correct in holding that the *Feres* defense was not waived when defendants failed to raise it until after trial. The doctrine is tantamount to a limitation of subject matter jurisdiction.

## II. APPLICABILITY OF *FERES* IMMUNITY TO THE PRESENT CLAIMS

■ It is beyond question that the *Feres* doctrine generally applies to claims brought by National Guard members. *See, e.g., Stencel Aero*, 431 U.S. at 673, 97 S.Ct. at 2058; *Anderson v. United States*, 724 F.2d 608, 610 (8th Cir.1983); *cf. Sebra v. Neville*, 801 F.2d 1135, 1140–41 (9th Cir. 1986) (*justiciability* doctrine restricts review of military *decisions* involving civilian National Guard technician because civilian National Guard employees must hold military rank). Stauber seeks to escape the doctrine on the ground that his claims arose while he and the defendants were civilian employees. Although the technicians had dual status for some purposes, the defendants respond that military regulations, standard operating procedures, and active-duty military officers controlled how the shop was run.[7] *See Johnson*, 107 S.Ct. at 2069 (because pilot was acting pursuant to standard operating procedures at time of

death, suit could implicate military discipline); *Millang*, 817 F.2d 533, 535 n. 3 (*Feres* immunity applies upon showing that persons involved were subject to military control; showing of actual control unnecessary). We agree that the conduct that occurred at the maintenance shop cannot give rise to actionable tort claims without impinging on military authority and calling into question matters which are exclusively the subject of military remedies. *Stanley*, 107 S.Ct. at 3063 (mere process of determining "which particular suits would call into question military discipline and decision-making would itself require judicial inquiry into, and hence intrusion upon, military matters"); *Chappell v. Wallace*, 462 U.S. 296, 305, 103 S.Ct. 2362, 2368, 76 L.Ed.2d 586 (1983).[8]

In 1984, in the *Shearer* decision, the Supreme Court noted that "[t]he *Feres* doctrine cannot be reduced to a few brightline rules; each case must be examined in light of the [FTCA] as it has been construed in *Feres* and subsequent cases." 473 U.S. at 57, 105 S.Ct. at 3043. The Court in *Shearer* focused on the effect of suits between military personnel on military discipline and the problem of having civilian courts second-guessing military decisions. *Shearer*, 473 U.S. at 57–58 & n. 4, 105 S.Ct. at 3043–3044 & n. 4; *see Atkinson*, 825 F.2d 202 (9th Cir.1987); *Millang*, 817 F.2d at 535.

Very recently, in the *Johnson* decision, the Supreme Court reaffirmed and broadened the *Feres* rule. It held that *Feres* immunity extended to a FTCA action brought by the widow of a Coast Guard pilot killed during the course of activities clearly incident to service; Mrs. Johnson alleged that the crash occurred because of the negligence of *civilian* federal air traffic controllers.[9] *Johnson*, 107 S.Ct. at

---

**7.** In his affidavit, Cline's direct supervisor, the active-duty Executive Officer of the Fifth Battalion, stated that "[a]ny and all decisions regarding the mission, staffing and operation of the OMS Shops are made by Federally Recognized military officers."

**8.** The district court's determination that the claims arose incident to military service is a factual finding; yet we review *de novo* dismis-

sals for lack of subject matter jurisdiction under the *Feres* doctrine. *E.g., Bon*, 802 F.2d at 1094 (citations omitted).

**9.** The Eleventh Circuit in *Johnson* had reversed the district court's dismissal under *Feres*. *Johnson v. United States*, 749 F.2d 1530 (11th Cir. 1985). The three-judge circuit panel concluded that Johnson's action had no effect on military discipline and no scrutiny of military decisions

2064. Strengthening *Feres'* prohibition on judicial review that would, even remotely, examine military decisions, the Court stated:

> Even if military negligence is not specifically alleged in a tort action, a suit based upon service-related activity necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission.
>
> . . . .
>
> Civilian employees of the Government also may play an integral role in military activities. In this circumstance, an inquiry into the civilian activities would have the same effect on military discipline as a direct inquiry into military judgments. For example, the [Federal Aviation Administration] and the United States Armed Services have an established working relationship that provides for [Federal Aviation Administration] participation in numerous military activities.

*Id.* at 2069 & n. 11. The *Johnson* majority also suggested that permitting military personnel to sue the government for injuries resulting from activities incident to their service on the basis of *any* government employee's negligence seriously undermines "duty and loyalty to one's service and to one's country." *Id.* at 2069.

Here, the district court found that in their work Stauber and the defendants were always under the direct command of active-duty military officers. The parties shared the same direct military relationships whether on civilian or military status. Their conduct was subject to military discipline, and indeed, plaintiff requested that his superiors step in to improve the situa-

tion. *Compare Millang,* 817 F.2d at 535 (all participants, including civilians, were subject to military statutes, regulations, and orders).

*Shearer* and *Johnson* were not actions against individual, nongovernmental defendants. Nonetheless, we conclude that the National Guard mechanic-technicians' work was just as integral to routine military activities as was the work of the air traffic controllers held to be immune in *Johnson*. Stauber's claims "are the '*type[s]* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.'" *Johnson,* 107 S.Ct. at 2069 (brackets in original) (quoting *Shearer,* 473 U.S. at 59, 105 S.Ct. at 3044 (emphasis in original)).

▇ Nor is Stauber entitled to establish that *some* of the defendants' conduct did not involve questions of workplace supervision, military regulations, remedies provided under those regulations, and military decisionmaking. Although Stauber alleged that some of the harassment occurred off-base, the district court concluded that his claims arose from conduct in the workplace. On appeal, Stauber has failed to show that this finding was clearly erroneous. Moreover, it is clear from the record that the off-base, after-hours harassment was merely an extension of on-base events to which intramilitary immunity properly applies. To examine the relationship between on- and off-base events in this case, beyond determining that the conduct involved was incident to service, would result in an impermissible intrusion upon military matters.[10] Stauber's action was correctly dismissed under *Feres* and *Johnson.*

---

would result. *Id.* at 1539. The Eleventh Circuit en banc court reinstated the panel opinion, concluding that *Shearer,* supported the panel's interpretation of *Feres. Johnson v. United States,* 779 F.2d 1492, 1493 (11th Cir.1986) (per curiam) (en banc). In reversing the en banc decision, however, the Supreme Court majority opinion made no reference to *Shearer's* statements that effect on discipline and avoiding scrutiny of military decisions were determinative. *See Johnson,* 107 S.Ct. 2063.

**10.** *See Stanley,* 107 S.Ct. at 3063. In *Shearer,* the Supreme Court observed:

> To permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct.

*Shearer,* 473 at 58, 105 S.Ct. at 3044 (citations omitted).

Our decision diverges somewhat from that of the Eighth Circuit in *Brown v. United States,* 739

## CONCLUSION

Notwithstanding the parties' dual employment status, we agree that Stauber's action arose "incident to service." *See Johnson,* 107 S.Ct. at 2068 ("An examination of [the rationale underlying the *Feres* doctrine] demonstrates that the status of the alleged tortfeasor does not have ... critical significance....").[11] Defendants, therefore, are immune from suit.

AFFIRMED.[12]

F.2d 362 (8th Cir.1984), *cert. denied,* 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985), which permitted a black National Guardsman who had been the victim of a mock lynching at an on-base drinking party to sue the perpetrators. The court held that the act could not conceivably serve any military purpose. *Id.* at 368. At the same time, the court held that suit against superior officers for failing to prevent or investigate the incident was barred by *Feres. Brown* may be distinguishable from our case in that the mock lynching was less connected with on-duty activity and with the command relationship than was the harassment of Stauber by the defendants here. In any event, *Brown* was decided before the Supreme Court in *Johnson* broadened the categories of activities that may be viewed as implicating military discipline under the *Feres* doctrine. *See Johnson,* 107 S.Ct. at 2069. Indeed, it is enough that the injury arose out of "activity incident to service." *Stanley,*

107 S.Ct. at 3063 (quoting *Feres,* 340 U.S. at 146, 71 S.Ct. at 159).

**11.** Thus, it is unnecessary to determine whether the parties were technically under a civilian, military, or hybrid status at the time of the injurious acts. *See Martelon v. Temple,* 747 F.2d 1348, 1351–52 (10th Cir.1984) (legislative history of National Guard Technicians Act, 32 U.S.C. § 709(e), demonstrates that Congress considered military mission of technicians paramount and technicians' duties inseparable from military obligations), *cert. denied,* 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985).

**12.** We endorse the district court's statement that "[t]o tax either costs or attorney's fees against Plaintiff in this case would very literally add insult to injury." Order at 6. Each party shall bear its own costs.