Kenneth L. JACKSON, Jr.,
Plaintiff–Appellee,

v.

Terry L. BRIGLE, Russell A. Ezovski,
William A. Wallace, John S. Lewis,
Defendants–Appellants.

No. 92–15219.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1993.

Submission Withdrawn Sept. 1, 1993.

Resubmitted Feb. 16, 1994.

Decided Feb. 25, 1994.

E. Roy Hawkens, U.S. Dept. of Justice, Washington, DC, for defendants-appellants.

Richard Gayer, San Francisco, CA, for plaintiff-appellee.

---

* The Honorable Manuel L. Real, Chief United States District Judge for the Central District of

Before: HUG, and LEAVY, Circuit Judges, and REAL,* Chief District Judge.

**OPINION**

HUG, Circuit Judge:

■ Former Lieutenant Colonel Kenneth Jackson of the United States Air Force filed a civil action in federal district court against the United States and various agents of the Air Force Office of Special Investigations ("AFOSI"), alleging causes of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* The United States, on behalf of those agents and itself, moved to dismiss these claims on the ground that it was immune from suit under *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) and its progeny. The district court denied that motion and the individual defendants appeal. The notice of appeal named as appellants only the individual defendants, not the United States. Thus, under *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 314–18, 108 S.Ct. 2405, 2407–09, 101 L.Ed.2d 285 (1988), the United States is not a party to this appeal. We reverse and instruct the district court to dismiss the *Bivens* claims.

**I.**

**JURISDICTION**

The present appeal challenges an order of the district court denying appellants' motion to dismiss on *Feres* immunity grounds. Ordinarily, this court's jurisdiction under 28 U.S.C. § 1291 is limited to final decisions of the district courts. The order appealed from in this case is not final in the sense that it did not terminate the litigation on the merits. Nonetheless, we held in *Lutz v. Secretary of the Air Force,* 944 F.2d 1477, 1480–84 (9th Cir.1991), that an order such as the one at issue here is rendered reviewable by the

California, sitting by designation.

collateral order doctrine enunciated by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

## II.

## STANDARD OF REVIEW

"We 'review independently the question whether the *Feres* doctrine is applicable to the facts reflected in the record.'" *Lutz,* 944 F.2d at 1484 (citing *McGowan v. Scoggins,* 890 F.2d 128, 129 (9th Cir.1989)).

## III.

## DISCUSSION

### A.

Lieutenant Colonel Jackson was assigned to the Ballistic Missile Office at Norton Air Force Base. His responsibilities required that he have access to classified and highly sensitive military information. He lived off base in a house with a young civilian, Kenneth Lovato. In the process of investigating charges against Lovato concerning sexual conduct with minors, the local police obtained a search warrant to search the house occupied by Jackson and Lovato. The police had information that two young boys had been sexually molested by Lovato at Jackson's house. One boy had watched a pornographic film in Jackson's bedroom and had to perform sexual acts. The police informed the AFOSI of their intent to search Jackson's house and requested AFOSI personnel to accompany them and to have Jackson present.

Upon being notified about the warrant, Brigadier General Barry, at the request of the police, ordered Jackson to go with AFO-SI agents Lewis, Ezovski, Brigle, and Wallace to the house while the search was conducted. There was understandable concern about Jackson's possible involvement and the possible threat to security posed by the search.

The gravamen of Jackson's complaint is that these defendants in the course of this search and the later further investigation detained him and procured evidence regarding his homosexual lifestyle that was later used in proceedings resulting in his discharge from the Air Force. Reasoning that the military had no legitimate interest in Jackson's gender preference or lifestyle, the district court found that Jackson's alleged injuries were not "incident to his military service" and that his claims therefore were not subject to *Feres* immunity. We conclude, however, that under the broad construction that both we and the Supreme Court have given this term, the injuries alleged by Jackson are clearly "incident to military service."

In *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the Supreme Court held that members of the armed services could not sue the Government for injuries that "arise out of or are in the course of activity incident to service," creating a judicial exception to the broad waiver of sovereign immunity contained in the FTCA. The Court has since held that *Feres* immunity applies not only to FTCA actions but to *Bivens* actions as well. *See United States v. Stanley,* 483 U.S. 669, 683–84, 107 S.Ct. 3054, 3063–64, 97 L.Ed.2d 550 (1987); *Chappell v. Wallace,* 462 U.S. 296, 304–05, 103 S.Ct. 2362, 2367–68, 76 L.Ed.2d 586 (1983). The central inquiry upon which immunity turns is whether the injuries alleged by a plaintiff are "incident to military service." Although this concept has had a rather complex evolution, its overall trend is unmistakable. *See Persons v. United States,* 925 F.2d 292, 295 (9th Cir.1991). The test has been broadly construed to immunize the United States and members of the military from any suit which may "intrude in military affairs," "second-guess[ ] military decisions," or "impair[ ] military discipline." *Stauber v. Cline,* 837 F.2d 395, 398 (9th Cir.), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). It has been so broadly construed that "practically any suit that 'implicates ... military judgments and decisions' runs the risk of colliding with *Feres." Persons,* 925 F.2d at 295, *quoting United States v. Johnson,* 481 U.S. 681, 691, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (1987).

Our decision in *Stauber v. Cline* aptly demonstrates this point. In *Stauber,* a dual-

status employee[1] of the Alaska National Guard sued three fellow employees of a similar status for intentional infliction of emotional distress and libel. 837 F.2d at 396. Stauber alleged that over a five-year period, the three defendants had harassed him both on- and off-base, during regular work-duty hours and after hours. He also alleged that defendants, not under color of their military duty, made statements to third parties that harmed his reputation. The plaintiff and defendants worked together in an on-base National Guard maintenance center in Anchorage, Alaska. *Id.* at 396.

Stauber argued that *Feres* did not apply because the parties committed the alleged torts as civilian employees. We disagreed. We observed that both Stauber and the defendants were always under the direct command of active-duty military officers, that the parties' conduct was subject to military discipline and that the parties shared the same direct military relationships whether on civilian or military status. *Id.* at 400. We concluded from these circumstances that the resolution of Stauber's claims would require involvement by "the judiciary in sensitive military affairs at the expense of military discipline and effectiveness," and that Stauber's claims were therefore barred by *Feres*. *Id.* at 400 (internal quotations omitted). We also declined to consider whether some of the defendants' conduct—particularly off-base conduct—involved issues of workplace supervision, military regulations and the like. *Id.* In our view, an examination of "the relationship between on- and off-base events in this case, beyond determining that the conduct involved was incident to service, would [itself] result in an impermissible intrusion upon military matters." *Id.*

We have observed, however, "that not every action by one member of the armed services against another implicates military decision making, relates to the military mission, or is incident to service." *Lutz*, 944 F.2d at 1484. In *Lutz*, we found *Feres* immunity inapplicable where a retired Air Force major filed a *Bivens* action against three subordinates who allegedly broke into her office, removed personal property from her desk which indicated that she was involved in a lesbian relationship with her civilian secretary and disseminated copies of those documents to various Air Force personnel. *Id.* at 1479. As an alleged result of the defendants' actions, Lutz's superiors took a number of actions against her that destroyed her military career and forced her to resign.

The *Lutz* defendants argued that *Feres* should apply because they were active-status members of the military, that the relevant events took place on a military base, and that they were under a duty to report violations of Air Force regulations to appropriate Air Force officials. We rejected the first two arguments on the ground that neither of these circumstances, in and of themselves, is determinative of what is "incident to military service." *See id.* at 1485–86 & nn. 10–11. As for the third, we acknowledged that the defendants might be immunized for making colorable reports of violations to their superiors, but found it " '[in]conceivable that this duty required defendants to remove personal documents from their commander's desk after working hours and distribute them to other Air Force personnel.' " *Id.* at 1486 (quoting district court order).

We also made a point of distinguishing *Lutz* from *Stauber*. We observed that in *Stauber*, whether the challenged actions were "incident to military service" was sufficiently ambiguous to warrant application of *Feres*. *Id.* at 1487. We concluded in *Lutz*, however, that there was no such ambiguity: "the actions [of the *Lutz* defendants] were completely separate from on-the-job activities...." *Id.* at 1487. As we further explained, "[i]ntentional tortious and unconstitutional acts directed by one service-member against another which further no conceivable military purpose and are not perpetrated during the course of a military activity surely are past the reach of *Feres.*" *Id.*

█ In the present case, Jackson argues that the actions of the AFOSI agents "were

---

**1.** "Dual-status" indicates that he was a civilian employee, but that pursuant to statute he was required to join the National Guard as a condition of his employment. *Id.* at 396 (citing 32 U.S.C. §§ 709(b), 709(e)(1) & (2)).

completely separate from on-the-job activities," *citing Lutz*, 944 F.2d at 1487, because their actions exceeded whatever authority they might have derived from their superiors or from statutes and regulations. We disagree. First of all, whether they exceeded it or not, the agents were acting under color of their authority as military law enforcement officers. Jackson concedes as much in his complaint. Second, and more importantly, the agents were acting under color of General Barry's order. Although Jackson invites us to examine the scope of the authority conferred by that order, such an inquiry would involve the kind of "disentangling conduct not incident to service from that incident to service" which *Feres* precludes. *Id.* The fact that the agents' actions were in response to a military officer's order sets this case apart from *Lutz* and others in which *Feres* immunity has been held inapplicable. *See, e.g., Lutz*, 944 F.2d at 1484 (*Feres* not applicable where active service members broke into officer's office after hours, apparently on their own volition); *McGowan v. Scoggins*, 890 F.2d 128, 129 (9th Cir.1989) (*Feres* not applicable where retired army officer injured while conducting a personal errand at a United States Air Force base); *Roush v. United States*, 752 F.2d 1460 (9th Cir.1985) (*Feres* not applicable where injuries to active service member suffered at the hands of another active service member who was moonlighting as bouncer in enlisted persons' club unless statute or regulation provided that they were within direct control of military at the time accident occurred).

Jackson also argues that the actions of the AFOSI agents were unrelated to any legitimate military duty because the actions were predicated on unconstitutional military regulations and were, in and of themselves, violative of Jackson's constitutional rights. The district court relied on this rationale in its order denying dismissal of Jackson's claims. The court concluded that Jackson's alleged injuries were not "incident to his military service" because it could not "see any connection between Jackson's private, off-base, sexual activity and his military service. The military's interest in maintaining discipline does not obviously justify its intrusion into Jackson's sexual life." Order at 11. In support of its conclusion, the district court cited two Ninth Circuit decisions in which we required the military to demonstrate a rational basis for discriminatory treatment of homosexuals. *See Pruitt v. Cheney*, 963 F.2d 1160, 1166 (9th Cir.1991), *as amended* (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992), and *High Tech Gays v. Defense Industrial Security Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990).

While the district court's rationale and Jackson's argument reflect an appreciation for ethical and constitutional values, they do not comport with the *Feres* immunity analysis which the Supreme Court has adopted and this court has followed. Whether *Feres* immunity exists does not turn on the constitutionality of a regulation or of a defendant's actions. The Supreme Court has repeatedly underscored this point by upholding the application of *Feres* to claims of constitutional harm. *See Stanley*, 483 U.S. at 671–72, 107 S.Ct. at 3057 (constitutional violation stemming from non-consensual administration of experimental drugs in military experiment); *Chappell v. Wallace*, 462 U.S. at 297, 103 S.Ct. at 2364 (racial discrimination by superior officers).

The *Pruitt* and *High Tech Gays* cases, upon which the district court relied, do stand for the proposition that if the Government discriminates against an individual on the basis of homosexuality and does not demonstrate a rational basis for doing so, it will have violated that individual's constitutional rights. Neither of these cases involved claims for damages under the FTCA or *Bivens* and neither had anything whatsoever to do with *Feres* immunity. They merely articulate the requisites of a particular constitutional violation. Even if we assume that the AFOSI agents violated Jackson's constitutional rights in such a way, we must nonetheless conclude that his injuries were "incident to military service" and therefore not compensable under *Feres*.

## IV.

## CONCLUSION

The injuries that Jackson has alleged are clearly "incident to military service." The

*Feres* doctrine immunizes both the United States, under the FTCA, and the individual defendants, under a *Bivens* action, from liability. *See Stanley,* 483 U.S. at 683–84, 107 S.Ct. at 3063–64. Although this appeal involves only the *Bivens* action because the United States was not named in the notice of appeal, it is apparent, as both parties concede, that the resolution of this issue in the *Bivens* action controls the future course of the FTCA action.

We reverse the order of the district court denying the dismissal of the *Bivens* action and remand for further proceedings in accordance with this opinion.

**REVERSED and REMANDED.**