**Charles R. JACKSON, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 95–56491.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1997.

Decided April 14, 1997.

---

David C. Sullivan, Golper & Sullivan, San Diego, California, for the plaintiff-appellant.

Thomas B. Reeve, Jr., Assistant United States Attorney, San Diego, California, for the defendant-appellee.

Before: FARRIS, KOZINSKI, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Charles R. Jackson ("Jackson") appeals the district court's determination that his Federal Tort Claims Act ("FTCA") claim was barred by the *Feres* doctrine. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## FACTS

In 1989, Jackson enlisted in the United States Naval Reserve for six years. On Sunday, April 26, 1992, he was participating in a reserve drill as part of his weekend inactive-duty training at the Marine Corps Base, Camp Pendleton, California, when he lacerated his hand. He was examined and treated with stitches at the Naval Hospital at Camp Pendleton. The treating physician told Jackson to return to the Naval Hospital the next day for a follow-up examination by an orthopedist.

The next day, April 27, 1992, Jackson returned to the Naval Hospital. He was examined by then-Lieutenant Commander W.F. Bell, Medical Corps, United States Naval Reserve, a physician on active duty in the Navy who was subject to military orders in the performance of his duty. Because Lieutenant Commander Bell determined that Jackson was not in need of urgent treatment and Bell was apparently unsure whether Jackson had received administrative authorization for medical care, Bell referred Jackson back to his Naval Reserve Unit to obtain the appropriate administrative authorization and referral to a qualified hand surgeon. Jackson alleges that Bell committed negligence in the treatment of his injury by failing to inform him of his need to undergo microsurgery within seven to ten days of his injury in order to repair damage to the nerves in his hand.

By the time surgery was performed in June 1992, Jackson had sustained permanent nerve damage and required microsurgery nerve grafting and nerve harvesting that was performed at the Naval Medical Center in San Diego pursuant to Jackson's military benefits. Jackson received military disability compensation for his injury from April 27, 1992, through October 27, 1992, and from January 30, 1993, through February 1993.

On November 1, 1994, Jackson filed this suit against the United States for damages under the FTCA. On April 4, 1995, the district court denied the Government's motion to dismiss the complaint. After answering the complaint, the Government moved for summary judgment. On August 17, 1995, the district court granted the Government's motion for summary judgment, concluding that Jackson's claim was barred by the *Feres* doctrine. This timely appeal followed.

## ANALYSIS

FTCA claims that are brought against the United States are barred by *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), if the plaintiff's injury was sustained incident to his military service. The question of whether the *Feres* doctrine is applicable to facts reflected in the record of a case is a question of law reviewed *de novo. Jackson v. Brigle,* 17 F.3d 280, 282 (9th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 187, 130 L.Ed.2d 121 (1994).

A motion to dismiss pursuant to the *Feres* doctrine, even if raised after the answer to the complaint, should be treated as a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) rather than as a motion for summary judgment. *Dreier v. United States,* 106 F.3d 844, 847 (9th Cir.1996). "Thus, the district court erred insofar as it purported to grant the government's motion pursuant to Fed. R.Civ.P. 56." *Id.*

Since *Feres* was decided, the development of the doctrine barring suits for injuries sustained incident to service has broadened to such an extent that "practically any suit that implicates the military judgments and

decisions runs the risk of colliding with *Feres.*" *Persons v. United States,* 925 F.2d 292, 295 (9th Cir.1991) (quotations and citations omitted). According to established precedent, three rationales underlie the doctrine:

> (1) [T]he distinctively federal nature of the relationship between the government and members of its armed forces, which argues against subjecting the government to liability based on the fortuity of the situs of the injury; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure.

*Id.* at 294–95 (citations omitted). *See also United States v. Johnson,* 481 U.S. 681, 688–91, 107 S.Ct. 2063, 2067–69, 95 L.Ed.2d 648 (1987).

█ Feres bars service members from "bring[ing] tort suits against the Government for injuries that 'arise out of ... activity incident to service.'" *Johnson,* 481 U.S. at 686, 107 S.Ct. at 2066 (quoting *Feres,* 340 U.S. at 146, 71 S.Ct. at 159). The Court "has never deviated from this characterization of the *Feres* bar." *Johnson,* 481 U.S. at 686, 107 S.Ct. at 2066. Members of the National Guard and the Reserves are service members under *Feres. Stauber v. Cline,* 837 F.2d 395, 399 (9th Cir.1988); *see Schoemer v. United States,* 59 F.3d 26, 29 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 519, 133 L.Ed.2d 427 (1995) (citing cases). Jackson's suit is barred if his injuries arose out of activity incident to service.

It is undisputed that the initial injury to Jackson's hand arose out of activity incident to his service. Jackson argues instead that his treatment at Camp Pendleton the next day, when he was no longer in training, caused the injury he complains of. We reject the argument. The treatment resulted directly from the injury; it was rendered by a Navy doctor on a military base that was closed to the public. Had Jackson obtained proper authorization there would have been no question regarding his entitlement to treatment. The treatment was incident to Jackson's service.

█ "In cases where the existence of a *Feres* bar is not clear, we have looked to four factors to determine whether an activity is incident to military service:

> (1) the place where the negligent act occurred;
>
> (2) the duty status of the plaintiff when the negligent act occurred;
>
> (3) the benefits accruing to the plaintiff because of his status as a service member; and
>
> (4) the nature of the plaintiff's activities at the time the negligent act occurred."

*Dreier v. United States,* 106 F.3d at 848 (quoting *Bon v. United States,* 802 F.2d 1092, 1094 (9th Cir.1986)). Jackson invites us to add a fifth factor, that treatment, even though at a military facility for a military injury, must be initiated while the plaintiff is on active duty. We decline the invitation. We turn to an examination of the four factors.

### A. *Place of the Negligence*

It is undisputed that the Naval Hospital at Camp Pendleton where Jackson was treated is nine miles inside of a fenced and guarded military facility that is not open to the public. The Naval Hospital does not treat members of the general public. Though the resolution of this factor points heavily in favor of applying the *Feres* bar, we recognize that "[t]he fact that the activity took place on base is not itself controlling." *Lutz v. Secretary of the Air Force,* 944 F.2d 1477, 1486 n. 11 (9th Cir.1991). The inquiry thus continues.

### B. *Jackson's Duty Status*

█ Jackson's primary argument on appeal is that his military status at the time of the alleged negligence prevents the application of the *Feres* doctrine. Jackson concedes that at the time he received the laceration injury to his hand, he was on "inactive-duty training" in the Naval Reserve and therefore sought treatment for an injury that was clearly incurred incident to his military service. However, when he was examined by Dr. Bell at the Naval Hospital on Monday, after weekend drills were completed, he became an "inactive reservist," which Jackson seems to equate with civilian status. Jackson asks us on appeal to hold that such a distinction prevents the application of the *Feres* bar. We decline to do so.[1]

---

**1.** Jackson's appeal to 32 C.F.R. § 728.21 is una-

vailing. Under 32 C.F.R. § 728.21, Jackson was

In *Persons,* we noted that "[t]he relevant distinction ... runs between servicepersons who are on 'active duty' and those who have been discharged or are on furlough, not between 'off-duty' and 'on-duty' serviceperons." *Persons,* 925 F.2d at 296 n. 6. We recently noted in *Dreier* that these comments were mere dicta, not central to the holding in the case. *Dreier,* 106 F.3d at 853 n. 8.[2] "*Johnson* clearly indicated that a soldier's duty status at the time of injury was relevant, as have *Feres* doctrine cases decided subsequent to *Persons.*" *Id.* (citation omitted). We agree.

We believe the approach taken by the Fifth Circuit is instructive:

> We view duty status as a continuum ranging from active duty to discharge. Duty status may be dispositive; *Feres* applies to a serviceman who is on active duty and has active status but not to one who has been discharged. Nevertheless, if the serviceman's duty status falls somewhere in the middle of the continuum, then duty status is less important and we look to the other factors.

*Schoemer v. United States,* 59 F.3d 26, 29 (5th Cir.) (citations omitted), *cert. denied,* — U.S. ——, 116 S.Ct. 519, 133 L.Ed.2d 427 (1995). In cases such as this one, where the plaintiff does not occupy either end of the spectrum in terms of status at the time of the alleged negligence, we accord less weight to this factor.

In *Schoemer,* the plaintiff, in circumstances surprisingly similar to this case, alleged that a doctor's failure to recommend treatment for a medical condition caused a delay in the receipt of necessary treatment, resulting in significant injury. At the time of the alleged negligence, the plaintiff was preparing to enter the Louisiana National Guard and had been placed on "inactive status" in the "inactive reserves." *Id.* at 28–29. Not-

ing that *Feres* applies to reservists,[3] the court held that "[a]lthough Schoemer was no longer on active duty, he was still in the Army." *Id.* at 29. Finding that status was not dispositive, the court turned to other factors to conclude that the plaintiff's FTCA claim was barred.

In this case, Jackson urges that his status as an "inactive reservist" prevents the application of the *Feres* doctrine. This is the same status attributed to the plaintiff in *Schoemer.* We see no reason to adopt Jackson's argument that his status in this case is dispositive. Despite the fact that Jackson's weekend drills were over, it is undisputed that he was still a member of the Naval Reserve. The mere fact that Dr. Bell required Jackson to secure the appropriate administrative authorization for further medical treatment did not indicate that Jackson was not eligible for that medical treatment or render Jackson a civilian while he waited for those orders. The most that Jackson's argument can do is place him somewhere on the status continuum, making duty status a factor to be considered along with other factors in determining the application of the *Feres* doctrine. Because Jackson was a member of the Naval Reserve at all times relevant to his FTCA claim, we conclude that his military status at the time of the alleged negligence lends some support to the application of the *Feres* bar.

## C. *Benefits Jackson Received*

It is undisputed that Jackson received military disability compensation for the injury to his hand and subsequent complications following the nerve harvesting from his ankle from April 27, 1992, through October 27, 1992, and from January 30, 1993, through February 1993. It is also undisputed that Jackson received cost-free treatment at the

---

entitled to appropriate medical care for treatment of his hand injury because the injury was sustained during Jackson's period of inactive duty training. He was entitled to such care because of his military status, not, as Jackson contends, on a civilian humanitarian basis.

**2.** In *Dreier,* we also noted that "*Persons* involved a medical malpractice claim against a naval hospital, a situation squarely covered by other *Feres* doctrine cases and *Feres* itself." 106 F.3d at 853

n. 8. We discuss the significance of this statement in our analysis of the fourth factor below.

**3.** *See also Quintana v. United States,* 997 F.2d 711, 712 (10th Cir.1993) (addressing Quintana's "sole argument" that *Feres* did not apply to her because "she was on reserve status, rather than active duty status," the court held that "active duty status is not necessary for the *Feres* 'incident to service' test to apply.").

Naval Hospital at Camp Pendleton and cost-free microsurgery nerve grafting and nerve harvesting at the Naval Medical Center in San Diego as a benefit of service in the Naval Reserve and pursuant to Jackson's military benefits.

Because the injury to Jackson's hand was incurred incident to his military service, he was "entitled to medical ... care appropriate for the treatment of that injury ... until the resulting disability cannot be materially improved by further hospitalization or treatment." 32 C.F.R. § 728.21(b). Further, this medical care "is authorized for such an injury ... beyond the period of training to the same extent as care is authorized for members of the Regular service." *Id.* The existence and receipt of these medical and disability benefits by Jackson supports the application of the *Feres* doctrine in this case.

### D. *The Nature of Jackson's Activities*

Where a plaintiff is injured after visiting a social club or engaging in a recreational hike, his activity may be so unrelated to military matters that his tort suit is not barred. *See Dreier,* 106 F.3d 844 (hiking while off duty, no *Feres* bar); *Johnson v. U.S.,* 704 F.2d 1431 (9th Cir. 1983) (illegal party at NCO club; no *Feres* bar); *cf. Bon,* 802 F.2d 1092 (canoeing while off duty; *Feres* bar); *Roush v. United States,* 752 F.2d 1460 (9th Cir.1985) (injury at NCO club; *Feres* bar). But injury that flows from a serviceman's engaging in a military activity supports application of *Feres.*

Jackson argues that the tort occurred while he was being treated for an injury. Obtaining medical care is neither inherently military nor inherently civilian. However, we have held that *Feres* bars suits for medical malpractice even when the treatment was not for military-related injuries. *See, e.g., Hata v. United States,* 23 F.3d 230 (9th Cir.1994) (treatment of heart attack; noting that we have barred such claims "consistently"); *Atkinson v. United States,* 825 F.2d 202 (9th Cir.1987) (treatment of pregnancy). Here the treatment complained of was for an injury that was directly service-related.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

## CONCLUSION

■ Jackson's initial injury and the subsequent treatment of it arose from his activities as a member of the Naval Reserve. His suit against the United States is barred by the *Feres* doctrine. This conclusion is buttressed by the four-factor test we have sometimes used in close cases: three factors strongly support barring the suit, and the fourth supports the bar, though not as clearly. The grant of summary judgment, construed as a dismissal for lack of jurisdiction, was proper.

AFFIRMED.