Sikora, J.
RULING
Upon consideration of all motion and opposition materials and of oral argument by the original parties and by the applicant for intervention, the court ALLOWS the motion of the United States to intervene pursuant to Mass.R.Civ.P. 24(a) and (b) as a codefen-dant, without prejudice to any right of the plaintiff Laurie Ann Saviano to seek dismissal of that inter-vener in the future.
Mrs. Saviano has opposed the intervention of the United States. The argument of the United States and the reasoning of the opposition draw with them significant issues of federalism and military law doctrine. The issues and the present ruling warrant the following explanation.
REASONING.
Factual Background
The Complaint (supplemented by the motion papers) presents the following allegations. Victor J. Saviano II was an enlisted member of Company B of the 101st Engineer Battalion of the Massachusetts National Guard, a “heavy engineer” company regularly stationed in Wakefield, Massachusetts. On July 17, 1999, he accompanied his unit to the performance of a weekend drill. The mission was to construct an athletic field in the town of Berkeley, Massachusetts. Saturday, July 17, was exceptionally hot and humid. Unit members did strenuous physical labor. Allegedly unit supervisors did not provide sufficient rest breaks and fluid maintenance for the weather conditions. During the overnight of July 17-18, the troops encamped at the athletic field. During the night Specialist Saviano became ill. On the morning of July 18 he lost consciousness. An ambulance transported him to a nearby hospital. He died there. The cause was heat stroke.
The plaintiff Laurie Ann Saviano, his surviving spouse, brings the present action individually, as administratix of his estate, and as next friend of his children. She sues exclusively under the Massachusetts Tort Claims Act, G.L.c. 258, §2. She charges negligence against the unit supervisors.
Analysis.
The United States argues that “the plaintiffs claim is based upon the purported negligence of federal employees. As such, the proper defendant in this action is the United States,” under the Federal Tort Claims Act, 28 U.S.C. §1346 [Motion at 2], It reasons that National Guard personnel have a dual federal and state character, and that federal legislation renders them federal employees during the performance of training and exercises. 28 U.S.C. §2671. Specifically, 32 U.S.C. §502 commands National Guard units and personnel under regulations prescribed by the Secretary of the Army or the Secretary of the Air Force to accomplish regular periods of drill (usually monthly weekend exercises), and at least 15 days per year of active duty (usually a two-week summer engagement). See 32 U.S.C. §502(a)(l) and (2).
The United States reasons that, since Specialist Saviano was performing duty in the course of a weekend drill required by §502(a)(l), he was carrying out duties of federal law. By the same rationale, the United States characterizes the unit superiors as federal employees during the weekend drill.
The United States supplements this reasoning with a factual offering: that, since the unit was performing training under 32 U.S.C. §502, all unit personnel command and enlisted, received their drill pay from the United States and not from the Commonwealth of Massachusetts for the weekend of July 17-18, 1999 [Affidavit of January 20, 2003, from Lieutenant Colonel Cheryl L. Poppe of the Massachusetts National Guard to the office of the United States Attorney, attached to the speaking Motion to Intervene].
Upon intervention, the United States intends to interpose the doctrine of Feres v. United States, 340 U.S. 135, 146 (1950), as a conclusive affirmative defense (Motion at 3-5). It will remove the case to the United States District Court pursuant to 28 U.S.C. §§1441(a), 1442(a)(1) [discussion at oral argument], and presumably seek dismissal or summary judgment.
Mass.R.Civ.P. 24(a) permits intervention of right to an applicant claiming “an interest relating to the property or transaction which is the subject of the action” and needing participation in the suit for the adequate protection of that interest.
Rule 24(b) authorizes permissive intervention, inter alia, for circumstances in which “an applicant’s claim or defense and the main action have a question of law or fact in common.”
In the present circumstances I conclude that the United States Army is claiming an interest in the transaction subject to the present litigation within the meaning of Rule 24(a); and that it does offer a defense in common with issues of law or fact available to the Massachusetts National Guard in the main or original action (even though the Guard has not specifically *541 pleaded the Feres defense). It bears emphasis that, for the purpose of intervention, the United States need only show a colorable interest in the litigation and not a likelihood of ultimate success.
After a survey of all the authorities cited by the United States in support of its proposed intervention, and after reflection upon the plaintiff Saviano’s argument in opposition, I do observe some novel and difficult questions of federalism serious enough to complicate the ultimate merits of the United States’ position but insufficient to defeat intervention.
The doctrine of Feres is that the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80, does not permit personal injury claims by military personnel harmed by the fault of other members or officials of the armed forces. The Feres exception applies so long as the claimant suffers injury “incident to service”; and so long as the proposed wrongdoing employees were acting within the scope of their military authority. Feres, 340 U.S. 135, 138; 146-47.
While the FTCA contains no such explicit exclusion, the Supreme Court has developed four grounds or reasons for that interpretation of the statute.
The FTCA provides for liability of the United States “in the same manner and to the same extent as a private individual under like circumstances ...” 28 U.S.C. §2674. No zone of analogous private activity appeared to exist in parallel with military activity. Feres, 340 U.S. at 141-42. At the same time the Court did acknowledge that the FTCA definition of liability-generating “employees” of the government included “members of the military or naval forces of the United States . .. acting in line of duty,” 28 U.S.C. §2671; and that the Act explicitly excluded from liability “any claim arising out of the combatant activities of the military or naval forces . . . during time of war,” 28 U.S.C. §2680(i), so as to create the inference that noncombatant activity in peace remained within the coverage of the statute. Feres, 340 U.S. at 138.
The FTCA functions as an assimilative claims act absorbing and applying the tort law of the place of the wrongful act or omission. 28 U.S.C. § 1346(b). This system of lex loci exposed the military services to the multiple and varied legal standards of liability and damages of the entire number of states and numerous American territories. The Court did not believe that Congress had intended to expose the “distinctively federal character of military membership to such a range of diverse and potentially disparate legal standards determined by the geographical fortuity of an injury; and that Congress had not intended to apply a uniform federal law standard to the relationship of the armed services with their members.” Feres, 340 U.S. at 142-44.
In lieu of FTCA liability, service members had the benefits of military insurance and compensation programs as remedy for injuries incurred in the line of duty. Feres, 340 U.S. at 144-45.
A system of statutory tort liability between service members, on the one hand, and their peers, superiors, and supervisory officials, on the other, would tend to undermine military discipline, order, and morale; to detract from the unique mission and accompanying need for authority and subordination within the military culture; and to expose military decision making to second guessing by civilian courts. Officials, commanders, and members could not pursue their duties with each other as actual or potential adverse litigants. United States v. Brown, 348 U.S. 110, 112 (1954).
For discussion and evaluation of the rationales, see also Johnson v. United States, 431 U.S. 681, 684 n.2 (1987) (majority opinion); and Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 671-72 (1987).
Multiple features of the present case differ from the usual operation of the Feres exemption.
Here, the National Guard soldier’s survivors are suing exclusively under the State Tort Claims Act, and not under the FTCA. Their target is the Massachusetts Treasury, not the federal Treasury.
The state law interests may, as a practical matter, predominate over the federal law interest, and reduce the importance of the Feres purposes.
The “distinctively federal” relationship between the member and his service is absent. The typical National Guard member would reasonably expect to be covered by the law of that home state. Neither he, nor the state militia and its superior officers and officials, nor the state treasury, are exposed to the diverse or disparate legal standards and consequences contemplated by the Feres doctrine. The face of the present lawsuit has an entirely intrastate appearance. The plaintiff survivors of a National Guardsman are suing the defendant Commonwealth for relief exclusively from the state treasury under standards of liability and damages defined by the Massachusetts Tort Claims Act.
The alternate military insurance and compensation programs offered to Guard personnel may differ from the federal levels and warrant state law liability as a compensatory device.
The presumed reduction of military discipline may be a cost which the National Guard is willing to assume or which the state government disbelieves.
The primary relationship at issue is the membership of the individual guardsman in the state organization. That relationship will include factors of recruitment and retention; and of rights, duties, and liabilities between them.
The activity generating the injury or death in this case had the character of a community-based civic project more typical of Guard service than National Army service: the construction of a useful local public *542 amenity as distinguished from combat, combat-support, or logistical training.
State law interest may be correspondingly strong.
In this instance the position of the United States reduces to the proposition that the Feres doctrine universally bars damages suits by state National Guard members under state tort claims statutes for any injury resulting from the fault of other National Guard members, superiors, or officials. The United States’ reliance upon 32 U.S.C. §502(a)(i) [covering all typical drills] and §502(a)(2) [covering all typical annual active duty training] as the linch pin of Feres immunity effectively blankets all usual National Guard activity from the typical member. The immunity would be virtually plenary.
Presumably, the Feres exception, as a matter of federal law, would override any contrary terms or judicial interpretation of a state tort claims statute under the Supremacy Clause, U.S. Const. Art. VI, Clause 2.
The essential federal interest would not be financial, since only the state treasury would be exposed to damages. It would be the Feres policy goal of general military order and discipline among National Guard personnel as dual state and federal soldiers. This enlargement of Feres to all Guard personnel over any contrary terms of state law would constitute a major and categorical development of law.
As the plaintiff points out, in its Answer the Commonwealth did not assert the Feres doctrine as an affirmative defense. It has now filed notice of its support of the United States’ motion to intervene as codefendant and to present the Feres position.
The United States has collected a body of decisions for the point that the Feres doctrine “applies equally to claims by National Guard members.” Motion at 4 n.8. The decisions do indeed hold that Guard members cannot sue federal defendants under the Federal Tort Claims Act for service-related injuries or death. See Selbe v. United States, 130 F.3d 1265, 1267 (7th Cir. 1997) (Indiana Guard member sues United States under FTCA); Jackson v. United States, 110 F.3d 1484, 1487-89 (9th Cir. 1997) (federal naval enlisted reservist sues United States under FTCA; reference in dicta to reservists and Guard members under the FTCA); Schoener v. United States, 59 F.3d 26, 28-30 (5th Cir. 1995) (Louisiana Guard member sues under FTCA); Quintana v. United States, 997 F.2d 711, 712 (10th Cir. 1993) (New Mexico Guard member sues under the FTCA); and Herreman v. United States, 476 F.2d 234, 236-37 (7th Cir. 1973) (widow of Wisconsin Guard member sues under the FTCA).
However, only one decision has presented the alignment presented here: a suit by a Guard member against a state government under its state tort claims act. Stauber v. Cline, 837 F.2d 395, 399 (9th Cir. 1988) (Alaskan Guard member sues the Guard superiors for a longrunning pattern of harassment, intimidation, and interference). In that instance the court applied the Feres doctrine without detailed or explicit analysis. It relied upon two decisions in which Guard personnel had sued federal defendants unsuccessfully under the FTCA. Stauber appears to import the Feres defense into the Alaska Tort Claims Act (after a federal district court jury verdict of $106,000 in damages) upon the military discipline rationale. Id. at 398-99. The Stau-ber court omits any discussion of the Alaskan tort claims statute and appears to assume the portability of the Feres defense from the FTCA into the state tort claims litigation. In particular, it does not mention the operation of 32 U.S.C. §502(a)(l) and (2).
Through the decades since the Feres decision in 1950, the doctrine has attracted substantial criticism. The criticism would tend to contradict the extension of Feres as a categorical bar to state tort claims act suits by Guard personnel against state defendants, as the United States proposes here. Or, in the absence of preemptive federal law doctrine, it would favor the allocation of authority to state legislatures and state courts for the determination of a Feres-type exemption in state tort claims acts.
The most withering critique of Feres originated from four dissenting Justices in United States v. Johnson, 481 U.S. 681, 692-703 (1987) (Scalia, J. joined by Brennan, Marshall, and Stevens, JJ.). The majority extended the Feres defense to conduct by civilian federal employees (employees of the Federal Aviation Administration allegedly causing the death of a federal Coast Guard helicopter pilot). The dissenters reasoned that the Feres court had reached a conclusion contradicted by the language of the FTCA, id. at 692-94; that the parallel private liability rationale had expired in subsequent decisions, id. at 694-95; that the fear of geographically varied recovery was outmoded, id. at 695-96; and that the availability of alternate benefits and compensation was no longer valid, id. at 697-98. They doubted the practicality of the “military discipline” rationale, id. at 700; and concluded strenuously, id.:
In sum, neither the three original Feres reasons nor the post hoc rationalization of “military discipline” justifies our failure to apply the FTCA as written. Feres was wrongly decided and heartily deserves the “widespread almost universal criticism” it has received [citations omitted].
Vigorous and representative scholarly criticism of Feres appears in Taber v. Maine, 45 F.3d 598, 606-10 (2nd Cir. 1995, per Calabresi, J.); J. Wells, “Providing Relief to the Victims of Military Medicine: A New Challenge to the Application of the Feres Doctrine in Military Medical Malpractice Cases,” 32 DUQ.L.REV. 109, 120-31 (1993); J.M. Bernott, “Fairness and Feres: A Critique of the Presumption of Injustice,” 44 WASH. & LEE L.REV. 51, 54-56, 62-70 (1987) (surveying and challenging the criticism); D.S. Schwartz, *543 Making Intramilitary Tort Law More Civil: A Proposed Reform of the Feres Doctrine," 95 YALE L.J. 992, 991-1003, 1011-16 (1986); B.P. Cain, “Military Medical Malpractice and the Feres Doctrine,” 20 GA.L.REV. 497, 517-25, 530-31 (1986); T. Bennett, “The Feres Doctrine, Discipline, and the Weapons of War,” 29 ST. LOUIS U.L.J. 383, 405-11, 420-21 (1985); J. Rhodes, “The Feres Doctrine: After Twenty-Five Years,” 18 A.F.L. REV. 24, 40-44 (1976); and E.F. Hornbrook and E.J. Kirschbaum, “The Feres Doctrine: Here Today— Gone Tomorrow?,” 33 A.F.L. REV. 1, 8-15 (1990). The upshot of the criticism is that the justifications of the rule are obsolete and that it inflicts an inequitable hardship upon service members, particularly because the military insurance programs are inferior to their civilian workers compensation counterparts and because the military discipline concern is tenuous.
A final novel feature is present. If the United States removes the action to the United States District Court, and if that court should decide that the Feres exemption should not extend to a suit by a state military claimant against the state government under a state tort claims statute, the case would seem to require remand to the Superior Court. The federal question would be gone as the basis of subject matter jurisdiction. 28 U.S.C. §1331. And the Eleventh Amendment would bar the federal trial court from the award of retrospective damages from the state treasury. Edelman v. Jordan, 415 U.S. 651, 671-74 (1974); Ford Motor Co. v. Department of the Treasury, 323 U.S. 459, 464 (1945). The Massachusetts Legislature has confined the waiver of its sovereign immunity by the Massachusetts Tort Claims Act to damages actions commenced in the Superior Court. G.L.c. 258, §3.
CONCLUSION.
The present litigation contains potentially significant issues of military tort liability, federalism, state policy interest, and state law. The ultimate issue of the case appears novel or almost novel. The United States has defined an interest and a question of law entitling it to intervene under the standards of Mass.R.Civ.P. 24(a) and (b).